The opinion of the Court was delivered at this term by
Jackson, J.
The general rule as to the wages of seamen, which has been for many years recognized and uniformly adopted in our Courts, is, that if the ship has earned one or more freights, and is afterwards lost before completing the voyage for which the seaman is hired, he is entitled to his wages up to the last port of delivery, and for half the time that the ship lies in that port.
In this case, it has, however, been argued, for the defendant, that this rule is assumed on the presumption that one half of the time is commonly employed at sucli a port in unlading, and one half in relading, a cargo; and that, when the fact is proved, the presumption must yield to the evidence, and the rule will no longer apply.
To this it may be answered, that we know of no exception in any adjudged case in this Court; although many cases are recollected, which were decided before the commencement of our reports, ip which the exception might have been made with as much propriety as in the present.
But if the rule were not so well established, it would not perhaps be easy to imagine one more just and equitable, as applied to the present case, than that before mentioned. The ship-owner contends that, as the outward voyage only was performed, he ought to be holden to pay only the wages for navigating the ship outwards, and for unlading her outward cargo. On the other hand, the seaman may, perhaps * with equal justice, allege [ * 548 ] that, as the homeward voyage only was lost, he ought to lose only the wages for the time employed in lading the homeward cargo, and for navigating the ship so far as she proceeded on her homeward voyage.
If a ship, on her outward voyage, is seized and carried into any *490 port out of the course of her voyage, and is afterwards restored to the master, and arrives safely at her port of delivery, the seaman receives his wages for the whole time of such detention, although the ship be lost on the return voyage. On the other hand, if a ship is detained in like manner on her homeward voyage, and is after-wards lost, the seaman loses his wages for the time of such detention, as well as for all the other time consumed on the homeward voyage.
But in a case like the present, it is difficult to say whether the detention lengthened the outward or the homeward voyage. It would introduce endless perplexity and litigation, if we were in every case to inquire into the causes or motives which influenced the foreign government in ordering the detention, to enable us to decide whether it is attributable most to one or to the other part of the voyage. Suppose a vessel detained in a foreign port by an embargo imposed from political motives, without any reference to the particular ship, or the commerce in which she is engaged. There would be nothing in the nature or cause of the detention, to show to which part of the voyage it should be attributed. In truth, it would apply as well to one part as to the other; and it does not seem to affect materially the merits of the question, whether the embargo were imposed before the ship had discharged her outward cargo, or after she had begun to receive on board her return cargo. It is a detention at the port of delivery, between the outward and homeward voyage, and not constituting exclusively a part of either. If, therefore, we were at liberty, without reference to authority, to decide according to equity and good conscience, or to adopt a [ * 549 ] rule that would be most convenient * in practice, we could not, perhaps, devise one better than that heretofore established.
It appears, from the facts agreed in this case, that the ship arrived at her port of delivery on the 28th of March, 1812, and proceeded on the homeward voyage, with her return cargo, on the 12th of February, 1813. The plaintiff is therefore entitled to the wages of his apprentice to the 4th of September, 1812, which will include half the time of the ship’s stay at the port of delivery, (a)

 Locke vs. Swan, 13 Mass. Rep. 76. — Swift vs. Clark, 15 Mass. Rep. 173.— Moore vs. Jones & Al. 15 Mass. Rep. 474. — Giles vs. The Cynthia, 1 Peters's Adm. 203. — Boardman vs. The Elizabeth, 1 Peters’s Adm. 130.— Thomson vs. Faussat, 1 Peters’s Cir. C. R. 182. — Murray vs. Kellogg, 9 Johns. 227. — The Two Catharines, 2 Mason, 319.—Millet vs. Stephens, 2 Dane, Abr. 461.—Rand vs. The Hercules, 6 Hall Law, J. 21. — Jones vs. Smith, 4 Hall, L. J. 276. — Johnson vs. Walterstroff, 1 Peters’s Adm. 390. — Blanchard vs. Buckman, 3 Greenl. 1.