People *v.* Wells.

## PEOPLE *ex rel.* FOWLER *v.* WELLS.

At the general election held in Yuba County in September, 1855, W was elected County Treasurer of that county for two years from the date of his election, and until his successor was chosen and qualified. On the twenty-eighth day of April, 1857, a special Act was passed, extending the term of this officer to the first Monday in January, 1858. On the seventh of May, 1857, W resigned, and S P W was appointed by the Board of Supervisors in his stead. At the general election in September, 1857, F received the majority of votes for that office, for the unexpired term of W, and claimed the office : *Held,* that the appointee held for the balance of the extended term, and that there was no vacancy to be filled at the election in September, 1857.

It is a well settled rule of construction, that statutes upon the same subject matter must be construed together, and that a general provision must be controlled by one that is special.

APPEAL from the District Court of the Tenth Judicial District, County of Yuba.

At the general election held in Yuba County in September, 1855, A. F. Williams was duly elected County Treasurer of that county for the term of two years from the time of his election, and until his successor was chosen and qualified. On the twenty-eighth day of April, 1857, a special Act was passed, extending the term of this officer to the first Monday in January, 1858. On the seventh day of May, 1857, Williams resigned, and the defendant was appointed by the Board of Supervisors in his stead. At the general election in September, 1857, the relator received a majority of votes for the short term, and having properly qualified, demanded the office of the defendant. This demand being refused, this proceeding was instituted. Judgment was had for defendant, and the People appealed.

*T. B. Reardon* for Appellants.

I. No proclamation was necessary to the validity of this election. We contend that the election was perfectly valid without any order of the Supervisors; that no notice of such election by the Supervisors was necessary or required.

In the first place, let us inquire in what cases an order or proclamation for an election is necessary, and when unnecessary.

Notice of the election must be given by the Supervisors when the election is a special election, and not otherwise.

21

An election is special whenever the time, place and officers are not provided for by law.

Now if the time, place and officers of the election were provided for by law in this instance, then the election at which the relator claims to have been elected was a general election, and good without the order or intervention of the Supervisors. *Vide* People *v.* Brenham, 3 Cal. R. 491.

The election in question was a general election—

I. Because the time, place and officers were provided for by law.

1st. The time was fixed by law; the defendant had been appointed to fill a vacancy occasioned by a resignation; the law provides that such appointments may be made by the Supervisors, but that they shall expire at the next general election. Wood's Digest, art. 2,884.

Now the law prescribed that the next general election should be held on the second day of September, A. D. 1857; so that defendant's term of office was as well defined as though he had been holding a full term by virtue of a general election; he was an incumbent in office, whose term expired on a day certain, which day was fixed by the statute.

2d. The places and officers of election were the same as those provided for the general election.

II. This was a general election, because it was an election to choose a successor to an incumbent in office whose term had expired by limitation of law, and the *law* gives notice of all such elections.

It was not to fill a vacancy caused by resignation, death or removal, for the defendant himself had been appointed to fill such a vacancy: now if the law, instead of giving to the Supervisors the power to fill vacancies in county offices—had required that an election should be held for that purpose—then such an election would have been a special election, inasmuch as neither the time, place or officers were provided for by law.

Again: this was a vacancy occasioned by operation of law; because, when Williams resigned and the defendant was appointed to fill the vacancy created thereby, the law expressly limited his term of office till the general election next succeeding his appointment; and the law provided that at such general election the unexpired term should be filled by the people.

People *v.* Wells.

Then where is the difference or distinction between an election to fill a full term and an election to fill an unexpired term, when the law equally prescribes the time when both such elections shall be held ?

If notice by the Supervisors is not necessary in the former, why should it be required in the latter ?

In the case of The People *v.* Porter, 6 Cal. R., page 26, speaking of the decision in the case óf The People *v.* Brenham, 3 Cal. R. 491, Judge Terry says : " I understand the decision to apply only to general elections to fill vacancies occasioned by operation of law ; the question involved was the validity of an election held under the Charter of the City of San Francisco, to fill vacancies occasioned, not by resignation, but by reason of the expiration of the term for which the incumbent was elected ; the Court properly ruled that the failure of the incumbent to give the required notice could not deprive the people of their right under the law to elect their officers."

In this case the election was not to fill a vacancy occasioned by resignation, but to elect a successor to an incumbent whose term of office had expired by " operation of law."

In what respect was the order of the Supervisors, or a notice by them, necessary or material in this election ?   Could they have given the electors any other notice than the law had already given them ?  Could they have conferred upon the electors any other right than they already possessed ?   Could they have appointed any other time or place for the election ?   Could they have done anything in relation to the election which the law had not already provided ?

For authorities, we refer to Wood's Digest, articles 2,113 to 2,119 ; People *v.* Brenham, 3 Cal. R. 480 ; Dickey *v.* Hurlbut, 5 Cal. R. 334 ; *Ex parte*, Heath *et al.*, 3 Hill, 42 ; People *v.* Fitch, 1 Cal. 520 ; People *v.* Peck *et al.*, 11 Wendell, 604 ; People *v.* Porter, 6 Cal. R. 26.

II. It is argued that there was no vacancy in this office at the date of the general election ; that the defendant held over under the Act of 1850, concerning the office of County Treasurer, until the first of January, 1858, or until the expiration of the term for which Williams had been elected.

We contend that this position is not tenable, and cannot be maintained upon principle or authority.

So much of the Act concerning Treasurers, passed in 1850, as conferred upon the Court of Sessions the power to fill a vacancy in that office, by appointment for the balance of the term, was afterwards repealed.    On the eleventh of April, 1850, after the passage of the above named Act, but at the same session, the Legislature passed an Act concerning Offices; and in providing a mode for filling vacancies in county offices, prescribed that the County Judge should order an election to fill the vacancy.    See section 53, Act concerning Offices, 1850.

In 1851, on the twenty-eighth of April, another Act concerning Offices was passed, repealing the one of 1850; and section 47 of that Act provides that, in case of a vacancy in the office of District Attorney, County Clerk, or *any other* county office, except County Judge, the Court of Sessions shall fill such vacancy by appointment until the next general election.

In 1855, on the eighth of February, it having been previously decided by this Court that Courts of Sessions had no authority to exercise such a power, the Legislature amended the 47th section of the Act of 1851, concerning Offices; and again, on the twentieth day of March, 1855, the Legislature passed an Act to create a Board of Supervisors in the counties of this State, etc., and section 20 of that Act prescribes that, in case of a vacancy in any county office, except that of County Judge, the Board of Supervisors shall appoint some suitable person until the next general election.

Now, although the 4th section of the Act concerning County Treasurers, passed in 1850, has never been expressly repealed, yet we think it beyond question that it is clearly repealed by implication.

In order to ascertain whether or not a former statute has been repealed by implication, we think we can safely follow the following rules of law, supported, as we believe, by an unbroken current of authorities, and founded upon the soundest principles of reason and justice.

1st. If a provision in one statute be inserted in another, but varying in its terms, it shows a different intention in the Legislature.    (Rutland *v.* Mendon, 1 Pick. 154–6 ;  opinions of the Justices, 7 Mass. 523.)

People v. Wells.

2nd. In construing a statute the Court must consider its policy, and give to it such construction as may appear best calculated to advance the intention of the Legislature. (Allen v. Parrish, 3 Ham. 198.)

3rd. When the provisions of two statutes are so far inconsistent that both cannot be enforced, the latter must prevail. (Ludlow v. Johnson, 3 Ham. 553.)

4th. A special statute is merged in a subsequent general statute, if the provisions of the two are repugnant. (Gage v. Courrier, 4 Pick. 399; 3 How. U. S. C. 636.)

5th. A subsequent statute revising the subject matter of a former one, and evidently intended as a substitute for it, must operate to repeal the former, to the extent to which its provisions are revised. (Commonwealth v. Crowley, 1 Ashmead, 179; Dobbins v. Supervisors, 5 Cal. 414; 11 Mass. 545; Commonwealth v. Kinsball, 21 Pick.—conclusion of the opinion; 3 Alabama, 626; 5 Hill, 221.)

6th. A general system of legislation upon the same subject matter should be taken into consideration, in order to aid in the construction of one statute relating to the same subject. (3 Mass. 17, 21; 8 Mass. 418; 1 Pick. 248; 10 Pick. 235.)

Now the policy of the law is evidently to favor the election, by the people, of all officers; and whenever the Courts can advance this policy, without doing violence to a plain provision of the statute, they will certainly do so.

But again: we say that the Supervisors have not the power to appoint in any instance for the balance of the unexpired term; the only authority they have in the matter is conferred upon them by sections 20 and 25 of the Act concerning Supervisors: the first enables the Board to fill the vacancy until the next general election, and the latter gives to it all powers and jurisdiction, other than criminal, before that time conferred by any law upon the Court of Sessions, so far as the same do not conflict with the provisions of that Act (the Act concerning Boards of Supervisors).

Now it will not be pretended that the Board of Supervisors derives its power to appoint for the *unexpired term* from the 20th section; then the question arises: is it authorized to do so under the general saving-clause in the 25th section? We contend not. Because that

section was only designed to invest the Board with such jurisdiction and power, other than criminal, theretofore conferred upon the Court of Sessions, as might not be in conflict with the preceding sections of the Act.    Now section 20 expressly limits their power of appointment, and is in direct conflict with the 4th section of the Act concerning County Treasurer, which enables the Court of Sessions to appoint for the balance of the term.

Then if we are correct in assuming that the 4th section of one Act is in conflict with the 20th section of the other, how can it be contended that the Board of Supervisors had the same unlimited power to appoint in case of a vacancy in the County Treasurer's office as was given to the Court of Sessions in that particular ?

An enlargement or extension of such a power beyond the letter of the statute should not be encouraged or allowed.

At best, it is an extraordinary power, and only given to prevent an interregnum in office, and to avoid the inconvenience and expense of special elections.

*Messick & Swesey* for Respondent.

I. The defendant was lawfully entitled, under the law, to hold the office by virtue of his appointment in any event, until January, A. D. 1858, long after this suit was commenced.

II. But if he could not so hold till January, 1858, still he was entitled and required to hold until some one possessing the right and qualifications to take the office from him, demanded it, and no one demanded it but the relator, and *he* was not entitled or qualified to take it.

III. The first question to arise, as well under our plan of treating the question, as under the assignment of errors by plaintiff is, up to what time did the appointment of Wells give him a right to possess the office ?

The Board of Supervisors of Yuba County appointed him under the authority conferred upon them for that purpose by section 20 of the " Act creating a Board of Supervisors in the counties, &c."    (Laws, 1855, p. 55 ;  Wood's Digest, p. 696 ;  and see section 25 of same Act, p. 66 ;  Wood's Digest, p. 697.

These statutes, together with the Act of April, A. D. 1857, defining

the time when the persons elected shall enter upon the office, are *in pari materia,* and as such, must be construed together, so as to harmonize and give effect to each.

Smith, in his " Commentaries on Constitutional Construction," section 639, says : " That several Acts *in pari materia,* and relating to the same subject, are to be taken together, and comprised in the construction of them, because they are considered as having one object in view, and as acting upon one system, has been declared in several cases." See also section 640.

Again, the rule is laid down in the case of the United States *v.* Freeman (3 Howard, 564) as follows : " The correct rule of interpretation is, that if divers statutes relate to the same thing, they ought all to be taken into consideration in construing any one of them ; and it is an established rule of law, that all Acts *in pari materia,* are to be taken together, as if they were one law."

In the ninth volume of Bacon's Abridgment, (edition of 1854) page 243, the rule is laid down as follows :

" It is an established rule of law, that all Acts *in pari materia* are to be taken together, as if they were *one law.*"

Also, Rex *v.* Locdale, 1 Burrows, 447 ; 4 D. & East, (4th Term R.) 450.

Hence, under the rule as thus laid down, if section 4 of the Act concerning County Treasurers, secs. 20 and 25 of the Act concerning Boards of Supervisors, and the Act of April, 1857, be read together as one Act, the soundness of our construction is apparent.

All the power with which the Court of Sessions was endowed, except criminal jurisdiction, was transferred to the Board of Supervisors by section 25 of the Act concerning Supervisors, and the tenure and term of their appointee as County Treasurer, must be determined by section 4 of the special Act concerning County Treasurers, defining the term of his office as such appointee. The special Act referring to his office must control, no matter how the other county officers, not specially provided for, may be affected by the latter part of section 20 of the Supervisor Act. (Sedgwick on Statute and Constitutional Construction, page 123.) Again: it would seem that the Legislature intended all along to except this office from any limitation by a general Act ; for the

same Legislature which passed the Act concerning County Treasurers, and thereby made the office appointive in case of vacancy, passed the Act of 1850, concerning Offices.    Laws of 1850, page 209.

The argument that the appointment reached only to election day, proves too much, and leads to much trouble and absurdity.

The case of the People *v.* Mott, 3 Cal. 504, cited by appellant, has no bearing on this question.    That was decided upon the ground that the office was a constitutional office, and the Constitution provides the term of the appointee, by saying that the commission of Mott " should expire " at the next general election.

In the case of Powers *v.* Hunt (2 Humphrey, 24) the Constitution itself defined the time which the appointee should hold, and declared after a vacancy occurred, and an appointment thereto, " such office shall be filled by the qualified voters at the first election for any of the county officers."

But again: our construction of the law in this matter is sustained by the Act of April, 1857, in that it makes the term of every person thereafter elected to this office, to commence on the first Monday of January following his election.    The fact that no exception is made, shows that none was intended to exist.    *The fact that by this law every person elected thereto was not to take the office till January following his election, proves that the Legislature did not intend that any person required to take it before, should be elected.*

Again : our Constitution, art. 40, sec. 6, provides that the County Treasurers shall be *elected* or *appointed* as the Legislature shall direct ; and by sec. 7, that the duration of the office, if not declared by law, shall be held during the pleasure of the appointing power for any term not exceeding four years.

We have shown that the duration cannot be held to be fixed by sec. 20, but is by sec. 4.    But suppose it was not so fixed ; then of course by the Constitution, Wells would hold during the pleasure of the Board.    He was appointed in the place of Williams, resigned, and in default of any steps taken by them to provide another to fill the office before January, 1858, their pleasure must be deemed to have been that Wells hold till that time.

II. But if he could not so hold till January, 1858, still he was enti-

tled and required to hold until some one possessing the right and qual-
ifications to take the office from him, demanded it ; and no one
demanded it but the relator, and he was not entitled or qualified to
take it.

The office of County Treasurer is not simply a franchise in the nature
of office, the possession of which is only a matter of advantage to the
incumbent, but is a trust charged with duties and responsibilities of
great importance to the public which cannot be neglected without seri-
ous public inconvenience and detriment.

The custody and preservation of the public funds are with this office.

It will not probably be denied that the incumbent might hold as a
*locum tenens* beyond the exact limit of his term ; in other words, till
his successor was qualified.   No person is provided by law to whom he
can deliver the office and effects on going out, but " his successor,"
which more than implies that he shall keep them till a successor is
provided, except in case of death, when his legal representatives will
take charge of the same, and deliver over to a successor when he
appears.   Act concerning County Treasurers, sec. 17 ; Wood's Dig.,
p. 714, art. 3432.

Even if this were not so, this action being only upon the relation of
Fowler, and predicating defendant's liability to *ouster* upon *relator's*
right to *enter*, is not in the form to oust the defendant simply, and
leave the office empty.

But again : if Williams' term was not terminated by election day, but
ran to January, 1858, and Wells had no right to hold the balance of
the extended term, and there had been any law for electing some one
to fill the balance of that unexpired term, we say such an election was
a special election.   Peple *v.* Porter (6 Cal. 28).

Section 30 of the Act concerning Officers (Wood's Dig., p. 559)
declares when vacancies occur in office.

Sections 3 and 4 of the Act concerning Elections (Wood's Dig., p.
375) mentions only two kinds of vacancies in office to be filled ; one
occurring by the expiration of " the full term thereof, " and the other
by some other means, as death, resignation, etc.

It is clear that every election to fill a vacancy occurring otherwise
than by the expiration of " the full term" is, under the Act, a special

election, for the validity of which there must be an order therefor by the Board of Supervisors, designating the office to be filled, and the time of holding the election, (section 9, Act concerning Elections, Wood's Dig., p. 375) and a publication of such order as notice for ten days in the county, (Section 6, Act concerning Elections).

There must have been a time fixed by the proper officers ; (section 3) that it may have come on the day for general election, cannot dispense with these requirements. People *v.* Porter, 6 Cal. 28. But none of these things were done, says the report of the Referee.

Hence, unless the period of Wells holding the office was a full term, the election was unauthorized, and the relator could take nothing by virtue thereof.

At the July Term, 1858, BURNETT, J., after stating the facts, delivered the opinion of the Court—TERRY, C. J., concurring.

The only question to determine is, whether there was any vacancy in the office at the time of the general election in 1857. It will be remembered that, before the resignation of Williams, the term of his office had been extended by the special Act of April 28th, 1857.

By the provisions of section 4 of the Act of March 27, 1850, concerning the office of County Treasurer, it is provided that vacancies in the office shall be filled by appointment of the Court of Sessions, and that the appointee shall hold for the remainder of the term. Wood's Dig. 712.) By the Act of March 20, 1855, to create a Board of Supervisors, it is enacted that "when a vacancy shall occur in any county or township office, except the office of County Judge or Supervisor, the Board of Supervisors shall appoint some suitable person, an elector of the county, to fill the vacancy until the next general election." And by the same Act it is also provided that " the Board of Supervisors shall have and exercise, in its county, all jurisdiction and powers, other than criminal, conferred by any law on the Court of Sessions, or heretofore exercised by said Court, under any statute, or by any statute provided to be exercised by said Court, when the same does not conflict with the provisions of this Act." (Wood's Dig., pp. 696-7, secs. 20 and 25.)

It is a well settled rule of construction, that statutes upon the same

subject matter must be construed together, and that a general provision must be controlled by one that is special. (Smith's Com., sec. 639; The People v. Phœnix, 6 Cal. Rep. 92; Lucas, Turner & Co. v. Payne & Dewey, 7 Cal. Rep. 96.) The provision that the appointee to fill the office of County Treasurer shall hold for the remainder of the term is special, and relates only to that particular office, while the provisions of the twentieth section of the Act to create a Board of Supervisors are general, and must be controlled by the former. The twenty-fifth section of the latter Act merely confers the power of filling the vacancy upon the Board of Supervisors, but does not in any way affect the duration of the term of the person appointed. The *agent* for exercising this power is changed, but the power and effect of its exercise remain as before. (The People v. Phœnix, 6 Cal. Rep. 94.) The case referred to fully sustains the view we have taken.

There was no vacancy to fill by election, and no error in the judgment of the District Court.

Judgment affirmed.

FIELD, J., having been counsel in the Court below, did not sit in the case.

A reargument was subsequently granted in this case, and at the October Term, 1858, the following opinion was delivered by BALDWIN, J.—TERRY, C. J., concurring.

The judgment is affirmed on the authority of People *ex rel.* McKune v. Weller, decided at this term (*ante* 491). 4 9