## CHAMBERLAIN *vs.* LYELL, impleaded, &c.

The Federal Government has authority to regulate and control the execution of process issuing from its own courts, irrespective of the process acts of the respective States.

The constitutional and statutory "homestead" provisions confer upon the householder a personal privilege, merely, which he can waive at his option. Where husband and wife join in the execution of a mortgage of their homestead, it is a renunciation of this privilege, which cannot be made available to one claiming to hold under such mortgage.

The only proper parties to a foreclosure bill are the mortgagor and the mortgagee, and those who have acquired rights or interests under them, subsequent to the mortgage.

Adverse prior encumbrancers cannot be made parties in foreclosure cases, for the purpose of litigating titles.

Appeal from the Oakland Circuit.

This was a bill to foreclose a mortgage bearing date June 7, 1852, made by the defendant, Matthews, and wife, to complainant, on premises in Oakland county, which the bill alleged constituted the homestead of Matthews and wife, and which were claimed by the complainant to be exempt by law from execution.

The bill further alleged that the defendant, Lyell, claimed or pretended to have some right or interest in said premises prior to said mortgage, and had caused and procured a levy to be made upon said premises by virtue of an execution issued out of the Circuit Court of the United States for the District of Michigan, upon a judgment rendered therein in the month of May, 1852, in favor of said Lyell, and against said Matthews, for $1000 and upwards. The homestead was averred to be worth from $1000 to $1200. The levy was made soon after the judgment was recovered, and it was further alleged that Lyell insisted upon his levy and threatened to sell the premises. The bill prayed that said lien might be decreed to be held for naught, and that Lyell should relinquish all claims thereto. Lyell, in his answer, admitted that he had a lien upon said real estate; that he recovered the judgment above alluded to; that an execution issued upon said judgment, in due form of law, directed to the Marshal of said district; that said Marshal returned said execution that he had levied on said real estate, and gave notice thereof to said Matthews; that upon the 20th day of October, A. D. 1852, a writ of *venditioni exponas* was duly issued, directed to said Marshal, commanding him to sell said real estate; in virtue of which, said Marshal, on the 6th day of December, after the usual notice, sold said real estate at public auction to the defendant, as the highest bidder, and executed and delivered the necessary certificates of sale, according to law, and made return, &c. The appellant denied that said property was exempt from levy and sale in said execution, and insisted that the same was legally and properly

57

subject to such sale; and that his claim and right to said premises, by virtue of said levy and sale, could not be investigated or litigated in that Court, and claimed that his rights and interests were adverse to those of the mortgagor and mortgagee, and that he ought not to have been made a party to the suit, nor subjected to the expense of defending the same, nor could the validity of his claim be tried in said suit; and he prayed the same advantage and benefit from the matters and things set forth in his answer, as if he had specially pleaded the same or demurred to the said bill.

By a stipulation between the solicitors of the parties, all the matters of fact set up in the answer were admitted, and among others, that said levy was made on the 14th of May, 1852, and sale of said premises was made on the 6th day of December thereafter, by virtue of said *venditioni exponas.*

The Circuit Court, in granting a decree of foreclosure and sale, held and decided that said premises were exempted by the laws of the land from forced sale on execution, or other process issuing out of any court, and adjudged and decreed that the levy upon said lot and premises, by virtue of said writ of *fieri facias*, and the sale thereof by virtue of said writ of *venditioni exponas*, to the said defendant, James L. Lyell, should be set aside and held for naught; and that said premises should be disencumbered and freed from any and every lien, or pretended lien, claim, or title therein acquired by said Lyell, by virtue of the levy and sale, under said writ of *fieri facias* and *venditioni exponas.*

*A. D. Fraser*, for defendants.

1. The Circuit Court of the United States is a Court constituted by a statute of the general government, and is a Court of general jurisdiction. (1 *Wend.* 131.) This Court will judicially recognize Courts of general jurisdiction, their judges, their seals, their rules and maxims, in the administration of justice and course of proceeding. (1 *Greenl. Ev.*

§ 6.)  Congress has, by the Constitution, exclusive authority to regulate the proceedings in the Courts of the United States; and the States have no authority to control these proceedings, except so far as the State process acts are adopted by Congress, or by the U. S. Courts under the authority of Congress. (6 *Pet. Cond.* 1; 9 *Pet.* 359; 1 *Gal.* 168.) Proceedings on execution and other process in such Courts, are placed upon the same basis. (1 *How.* 305–6–8; 2 *Pet. Cond.* 75, 76, 492, 607; 1 *Wash. C. C. R.* 232; 6 *Pet.* 658–9 ; 16 *Ib.* 94; 1 *Kent Com.* 395, 411, 412; 3 *Story Com.* 624–5; 12 *How.* 39; 2 *Ib.* 615.)

The process act of 1789 adopted the State laws of the respective States then in force, not such as might be enacted afterwards, subject, however, to such alterations as the respective Courts, in their discretion, should deem expedient, or to such regulations as the Supreme Court should think proper from time to time, by rule, to prescribe. (6 *Pet. Cond.* 1, 22, 9; 9 *Pet.* 329; *Pet. C. C.* 1; 3 *Wash. C. C. R.* 328; 7 *How.* 621.)

This provision enabled the Courts of the Union to make such alterations and improvements in the forms and modes of proceedings as experience might suggest, and especially to adopt such State laws on the subject as might vary to advantage the forms and modes of proceedings. (1 *Pet.* 604; 8 *Ib.* 123; 12 *Ib.* 300.) The delegation of this power to the Courts by the act of 1792 was deemed constitutional, and that the power to alter and amend, embraced the whole progress of a suit from beginning to end, and until judgment should be satisfied. (9 *Pet.* 359, 360.) Congress, by the act of 1828, declared that writs of *execution and other final process* issued on judgments rendered in any of the Courts of the U. S., and the proceedings thereupon, should be the same, except their style, in each State respectively, as *now used in the* Courts of such State. "*Provided, however, that it shall be in the power of the Courts, if they shall see fit, in their dis-*

cretion, *by rules of Court, so far to alter final process in said Courts as to conform the same to any change which may be adopted by the Legislature of the respective States for the State Courts.* (4 *U. S. Stat. at Large, p.* 281, *sec.* 3.) This act was shortly after the decision in the case of Wyman *vs.* Southard, and the Bank of the U. S. *vs.* Halstead, and was intended as a legislative sanction of the opinions of the Court in those cases. (13 *Pet.* 45.) The Supreme Court has established this distinction, *that State laws which furnish the Court a rule for forming a judgment, are binding on the federal Courts, not laws for carrying that judgment into execution; that is governed by the Act of Congress, and the rules of practice in pursuance thereof.* (*Bald.* 274; 4 *U. S. Stat. at Large,* 280, 281, *and notes.*) But "no changes of the State law subsequently made have ever been admitted to change the nature of the process, or the proceedings thereon, or the effect thereof, unless so far as they have been sanctioned or adopted by subsequent acts of Congress, or by the rules and practice of the Courts of the U. S. in conformity therewith." (1 *Story R.* 601; 2 *McLean,* 322; *Conk.* 94, 95.)

The words, "the proceedings on writs of execution, and other final process," must, from their very import, be construed to include all the laws which regulate the rights, duties, and conduct of officers in the service of such process, according to its exigency, upon the person or property of the debtor. (*Laws U. S. Courts, from p.* 72 *to* 77; 9 *Pet.* 361, 362; 14 *Ib.* 301; 16 *Ib.* 303; 13 *Ib.* 45.)

The power to adopt rules as a regulation of proceeding on final process, so as to conform the same to those of State laws on the same subject, extends to the future legislation of the States, and as well to modes of proceeding on execution as to the forms of the writs. (13 *Pet.* 45, 64.) The Courts may so alter the form or process of execution used in the State Courts as to subject to execution issuing out of the federal Courts, lands and other property, not thus subject by the State

laws. (6 *Pet. Cond.* 22, 30; 13 *Pet.* 45; 1 *Ib.* 604; 2 *Mason*, 252, 282.)

By the act supplementary to the judicial system of the United States, passed in 1837, establishing, among others, the U. S. Circuit Court in this State, it is declared that "the said Circuit Courts shall be governed by the same laws and regulations as apply to the other Circuit Courts of the U. S." (5 *U. S. Stat. at Large*, 178.) Congress has also legislated on the subject of liens of judgments. (5 *U. S. Laws*, 338, *sec.* 10; *Ib.* 293, *sec.* 4.)

The act of Congress of 1842, declares that the provisions of the act entitled "An act to regulate processes in the Courts of the United States," passed 19th May, 1828, shall be and they are hereby made applicable to such States as have been admitted into the Union since the date of said act. (*Laws U. S. Courts*, 78–80; 5 *U. S. Stat. at Large*, 499.)

Under the authority thus conferred by law, the U. S. Circuit Court of this district, has from time to time, both prior and since the act of 1842, adopted the execution laws of the State, by rules of Court. On the 5th of July, 1847, the Court adopted a rule providing that in the levy and advertisement, as well on all sales of real and personal estate, thereafter to be had, by virtue of any writ issuing out of said Court, where the contract was made, or cause of action accrued, on or after the first day of March, A. D. 1847, the proceedings should in all respects be in conformity with the provisions of the R. S. of Michigan, title 18, chap. 79, and title 22, chap. 106, adopted in 1846, and on execution on any judgment obtained on any contract or cause of action, made or accrued anterior to the adoption of the said Revised Statute, the proceedings thereon shall be in conformity, in all respects, with the laws in force at the time when such cause of action accrued, and the parties to such execution shall be entitled to the same rights and privileges given to them in

virtue of such laws. By rule No. 168, adopted by the Court in 1843, it is declared that the parties to such execution shall be entitled to the same rights and privileges given them by virtue of the laws and practice aforesaid, (referring to the Revised Statutes of 1838,) and the practice of the Supreme Court of this State.

These are the existing rules of that Court upon this subject, and the only ones that are immediately applicable to this case. In 1852, a motion was made in the Circuit Court of the U. S. for the District of Michigan, in the case of Clark *vs.* Scranton & Dean, to set aside a levy upon property claimed to be a homestead, upon the ground that it was exempted by the Constitution and laws of this State, from execution sale, and upon full argument and consideration, the Court held that neither were obligatory upon that Court, in reference to the exemption of property, unless adopted by rule, and not having been so adopted, the motion was denied. The fact of the exemption clause having found its way into the Constitution, like many other provisions of law, does not give it greater efficacy, or more controlling effect than it would have, if it were a simple act of the Legislature. Neither our Constitution nor our laws, in this regard, can be paramount to or over-ride the legislation of Congress.

2. A Court of Chancery is not the appropriate tribunal for the trial of titles to land. (*Harr. Chy.* 98.) It has not jurisdiction to settle the title and bounds of land between adverse claimants, unless the plaintiff has some equity against the party claiming adversely. (5 *Leigh,* 192 ; 11 *Verm.* 135; 4 *Hill,* 469; 1 *Mumf.* 293; 1 *Dev. Chy.* 483; 4 *Heyw.* 229; 4 *Dana,* 38; 5 *Cr.* 177.) A person having the legal title cannot come into equity to have a pretended equitable title declared invalid. (2 *Dev. Chy.* 547–7; 4 *E. Ch.* 68.) It is improper for a Court of Chancery to determine the merits of conflicting land titles, where they are brought before the Court collaterally. (*Hardin,* 590.)

The rights created by our lèvy were acquired before the granting of the mortgage to the complainant, and it was, therefore, incompetent for him to make Lyell a party to this suit. (6 *Paige*, 635; 2 *Sandf. Ch.* 347.) In a foreclosure suit, a party claiming adversely cannot be made a defendant; and if he is, he may demur for want of equity. (3 *Barb. Ch.* 439; 4 *Sandf. Ch.* 208.)

3. Ii there was any question touching the legality or validity of the levy or sale alluded to, the complainant's remedy was in the U. S. Circuit Court, by motion or otherwise, for it is clear that the Court below had no jurisdiction in this form. (*Walker*, 344.)

4. Even assuming that the property in question was exempted from execution at the time of the levy, yet the instant the judgment debtor parted with it, it ceased to be such; and he can no longer claim the benefit of any such exemption, nor can the complainant, as deriving title from him, as it was a mere *personal privilege*, which could be set up by the debtor alone.

*Baldwin & Draper*, solicitors for appellee.

1. The Homestead Act of 1848, (see Session Laws 1848, 124,) exempts from forced sale, or any other final process from a Court, a homestead. Section 2, article 16, of State Constitution, adopted 1850, exempts from forced sale on execution, or any other final process from a Court, for any debt contracted after its adoption. The debt of Lyell accrued after the adoption of this Constitution. The sale of Lyell on execution is, therefore, void, or at least voidable as to Matthews.

2. The complainant, Chamberlain, is the mortgagee of Matthews and wife, and so far forth has a right to protection to the same extent as Matthews himself. This right is secured to a mortgagee both by the act of 1848 and by the Consti-

tution. (*Sec.* 2, *art.* 16, *Const.* 1850; *Sec.* 2, *Homestead Act* 1848, *p.* 124.)

3. This Court has full power and jurisdiction to settle the whole question involved in this case, and in so doing is bound by the organic law and statutes of this State, without reference to any rule adopted by the District Court of the United States for the District of Michigan; nor is the Supreme Court of this State bound by an adjudication of the Federal Court or Courts, but should consider as paramount the Constitution out of which it has its very existence. Sales of land on execution must be governed by the laws of the State where the land is situated, in force at the time of judgment and sale. (*Holman* vs. *Collins,* 1 *Carter Ind.* 24.)

The same doctrine has been repeatedly recognized in the Federal Courts; (*Golden* vs. *Prince,* 3 *Wash. C. C.* 313; *Hurd* vs. *Vattier,* 5 *Pet.* 398; 9 *Ib.* 607; 1 *Gall.* 271;) and they are bound to take cognizance of the laws of the several States. (*Gordon* vs. *Hobart,* 2 *Sum.* 402.) Supreme Courts of the respective States are co-ordinate and co-equal with the U. S. Supreme Court. (*Paddleford* vs. *Savannah,* 14 *Geo.* 438.)

As to the power of the Court of Chancery to remove a cloud upon a title to real estate, see Pettit *vs.* Shepherd, 5 Paige, 501; Radcliff *vs.* Rowley, 2 Barb. Ch. R. 23. A party may seek aid of a Court of Equity, either in case of actual or threatened sale of his property. (*Burt* vs. *Cassety,* 12 *Ala.* 734; *Hamilton* vs. *Cummings,* 1 *John Ch. R.* 517; *Van Doren* vs. *Mayor N. Y.,* 9 *Paige,* 388.)

93d Rule Ch'y Rules, clearly contemplates that a person claiming adversely, and asserting a right in opposition to the mortgagee's right may be made a party. See Earl Oxford's case, Lead. Ca. in Eq., 2, pt. 2d, Hare & Wallace notes, top paging 76, marginal 442.

Rights and remedies in respect to real property are to be pursued according to the *lex loci rei sitae.* (10 *Wheat. Const. U. S.* 19, *and cases there cited.*)

Where answer claims as a defence matter which might be available under special plea or demurrer, the specific objections must be set forth in the answer, and a general allegation at the close of the answer will not avail. (2 *Paige*, 509; *Holmes* vs. *Dole*, *Clark Ch'y R.* 71.)

By the Court, MARTIN, J.

The authority of the federal government to regulate and control the execution of process, emanating from its own Courts, irrespective of the practice acts of the several States, is too firmly settled upon authority, and too well grounded in reason and necessity, to admit of question; and the only question presented by this case, of sufficient importance for examination, and that, on account of its practical value, rather than its present necessity, arises from the joinder of Lyell, as a co-defendant with Matthews and wife, and the attempt to litigate his title in this suit. The bill is filed to foreclose a mortgage, executed by Matthews and wife; and Lyell is made a party defendant, not for the purpose of binding him by the decree of foreclosure, but for that of setting aside and avoiding a title held by him, adverse to that of the parties to the mortgage, and acquired by virtue of a levy upon the property in question, under an execution issued from the Circuit Court of the United States, made before the execution of the mortgage, and a subsequent sale. The ground insisted on for setting aside Lyell's title is, that such property was, at the time of the levy, exempted by our Constitution and laws, from sale upon execution, *as the homestead of the mortgagor*, *Matthews*. Passing by, then, the question of the authority of the United States Marshal to levy upon and sell the premises in question, and conceding all that is claimed by the complainant in respect to the obligatory force of our Constitution and statute laws upon the Courts of the federal government, yet the fact still remains, that our exemption laws, as well as the Constitution,

58

only confer upon a householder a personal privilege, which may be insisted upon or waived, at his option. It forces no privilege upon him, nor does it compel him to withhold the appropriation of his property for the just satisfaction of his debts. In the present case, by the joint execution of the mortgage to this complainant, by the husband and wife, the mortgagors had renounced all benefit of the exemption law, as against the mortgage: they had extinguished any right created by the law, and upon foreclosure, the purchaser, at the sale, will succeed to all the title of Matthews, precisely as though no exemption law had ever existed. Before such sale, equity holds that the legal title remains in the mortgagor, and of course up to that time, the right conferred upon him by the exemption law, would also remain in him; for no one will contend that this right can be severed from the title; while, on the other hand, if it shall be claimed that by the mortgage, the title passes to the mortgagee, then, when Matthews parted with his title, the property ceased to be his homestead, and he became only a tenant, and consequently the privilege of exemption no longer existed in him; and, as it was not the homestead of the complainant, so no such privilege or right ever was or ever could be his. Any other view would result in this strange anomaly, viz: that the exemption, like certain covenants in a deed, would run with the land, and property once exempt, would be always exempt. Indeed, a simple statement of the case suggests many reasons, aside from that above given, why equity will not interfere to assist this complainant in litigating this question, but turn him over to seek such remedy as he may have at law; not the least of which is, that the benefits of the exemption law never were claimed by the mortgagor, and that these parties stand as creditors with equal equities, at least, (if Lyell has not the greater,) and this Court will not aid one at the expense of the other.

But the really important question in this case, respects the

right of the complainant to make Lyell a co-defendant with the mortgagors in this bill. So far as this is a foreclosure bill, he is clearly an improper party. He can neither be concluded, nor is he affected by a decree of foreclosure. He can have no interest in it, and the rule in relation to parties in this class of bills, is that all those should be made parties whose interests are to be affected or concluded by the decree; and this is determined by the inquiry, have they an interest in the equity of redemption? See Story's Eq. Pl., § 193.

It is true, that by some Courts it is held that prior incumbrancers may be made parties to a bill of foreclosure, but this is upon the ground that the claims are concurrent, not adverse; and it is permitted, not for the purpose of litigating titles, but so as to dispose of the entire estate by one decree, and thus to prevent multiplicity of suits. And as a general rule, it is not permitted by a foreclosure bill to litigate any rights of incumbrancers, and never such rights as are adverse to those of the parties to the mortgage. In all such cases, equity regards the legal title as existing in the mortgagor, and proceeding upon such assumption, without permitting it to be questioned, enforces and protects the rights of parties having liens upon it, and enforces the securities only.

It has accordingly been held that "so far as mere legal rights are concerned, upon a bill of foreclosure, the only proper parties to the suit are the mortgagor and the mortgagee, and those who have acquired rights or interests under them, subsequently to the mortgage; and the mortgagee has no right to make one who claims adversely to the title of the mortgagor and prior to the mortgage, a party defendant for the purpose of trying the validity of his adverse claim of title in this Court. The case is analogous in principle to making one who claims adversely to the vendor, a party to a bill filed by the vendee for the specific performance of the contract

of sale; in which case it is held that such adverse claimant cannot be made a party for the purpose of having the validity of his claim settled by a decree of this Court, which shall thereafter be binding upon him in relation to his claim of title." (*Eagle Fire Company* vs. *Lent* et al., 6 *Paige*, 635; *and* vide *Lange* vs. *Jones*, 5 *Leigh's Rep.* 192; *Banks* vs. *Walker*, 3 *Barb. Ch. R.* 438, 450; *Wood* vs. *Davis*, 4 *Bibb.* 47; *Holcomb* vs. *Holcomb*, 2 *Barb. S. C. R.* 20.)

So far as the complainant in this bill goes beyond the purposes of foreclosure, and seeks relief against the defendant, Lyell, entirely independent of and different from that sought against Matthews, the misjoinder of independent causes of action is too apparent to require demonstration. In short, there is no ground upon which the bill can stand against Lyell, and it must be dismissed as to him, with costs.