## BOWMAN *v.* NORTON *et als.*

16   213|
78   475|
16   213|
146   741|

*Gee* v. *Moore* (14 Cal. 472) as to the power of the husband alone to alienate the homestead subject to certain restrictions, etc., affirmed.

Under the Act of 1851, prior to its amendment in 1860, mortgages upon the homestead, executed by the husband alone, were not absolutely void, but were invalid only to the extent required for the protection of the husband and wife in the enjoyment of their homestead rights.

Where, under the Act of 1851, both husband and wife unite in a conveyance of the homestead, the homestead rights are relinquished, and persons to whom the husband alone had mortgaged the homestead previous to such conveyance, may enforce their mortgages against the property in the hands of the grantee.

The Act of 1860 materially changes the provisions of the Act of 1851, and renders any mortgage hereafter of the homestead, except to secure or pay the purchase money, invalid for any purpose whatever.

A conveyance by the husband and wife of the homestead does not transfer the homestead rights. Such rights may be released and abandoned, but are, in their nature, incapable of sale and transfer. The exemption from forced sale is the personal right of both husband and wife, and the restraint upon the husband's power of alienation is the personal right of the wife alone, and they cannot be assigned to others.

A decree in insolvency, discharging the husband and setting apart to him certain premises as a homestead, does not discharge or impair the lien of a mortgage thereon previously executed by the husband. The mortgagee has vested rights which could not be thus divested; nor was such the intention of our Insolvent Act.

In this State, a judgment cannot become a lien upon the homestead. It can become a lien only upon the real property of the judgment debtor.

APPEAL from the Fourth District.

The facts are stated in the opinion of the Court. Plaintiff had judgment below. Defendants appeal.

*Heydenfeldt,* for Appellant.

I.  The estate belonged to the husband, and although a homestead, he had the power to mortgage the premises: the effect of such mortgage being only to postpone his mortgage to the homestead rights. (*Guiod* v. *Guiod,* 14 Cal. 566.)

II.  As soon as the homestead right was determined, the rights of the mortgagees became effectual, because the mortgage was good against the husband and all the world, subject only to the homestead use, and subject to nothing when that use was determined.

III.  The conveyance of the premises by the joint deed of the husband and wife, was a relinquishment of their homestead rights, and immediately thereupon the prohibition against the enforcement of the previous mortgage of the husband ceased. (*Hoyt* v. *Howe,* 3 Wis. 752; *Chamberlain* v. *Lyell,* 3 Mich. 448; *Allen* v. *Cook,* 26 Barb. 374; *Howe* v. *Adams,* 28 Vt. 541.)

IV.  In the earlier cases decided by this Court, there is not a single opinion in conflict with the principle here contended for, and in one case the tendency was towards it.

In *Cook* v. *McChristian* (4 Cal. 23) the sale by the husband took place at the time it was occupied as a homestead, and the action was ejectment against the wife.

In *Taylor* v. *Hargous* (4 Cal. 268) the special verdict shows distinctly that the premises were occupied as the residence of the family on the day of sale, and had been so for more than two years previous; and furthermore, that they had not subsequently acquired a new homestead.

And in *Sargent* v. *Wilson* (5 Cal. 504) it is held that the sale by the husband, while occupying as a homestead, is only void for the homestead value and good for the excess.

It was not until 1857, that the extraordinary doctrine was suggested and maintained, that there could be no abandonment of the homestead; a doctrine against reason and unsustained by authority. This character of decision occurs in three cases: *Dorsey* v. *McFarland,* 7 Cal. 342;

*Revalk* v. *Kramer*, 8 Id. 66; *Van Reynegom* v. *Revalk*, 8 Id. 75; all decided within a single period of a little more than a year.

Since the last of these cases, no decision has gone to the same extent, unless we count an *obiter dictum* in *Dunn* v. *Tozer*, (10 Cal. 167) which has nothing to do with the point decided in that case.

It is now evident, since the decision in *Guiod* v. *Guiod*, that the present Court has taken a new departure, or rather returned to principles which can be maintained by the soundest reason.

V.   The mortgagees, by virtue of their contracts, obtained vested rights in the mortgaged property for the purpose of satisfaction of their claims, and these rights were not divested by the action of the Court in Bankruptcy.

Besides, such a consequence was not only not intended by the Insolvent Act, but was specially provided against.   (Wood's Dig. 501, art. 2673, sec. 36.)

*E. W. F. Sloan*, for Respondent.

I.   The real estate in question was the homestead of Norton, and so remained until the sale and conveyance to the plaintiff.  Mrs. Norton joined in the conveyance, whereby the homestead estate became extinguished in conformity to the statute, and the plaintiff entering became at once seized of the land in fee simple.

A purchaser of homestead premises, by the joint deed of husband and wife, takes the property subject only to existing liens and incumbrances.  A mortgage upon the homestead, without the wife's signature, is not lawfully obtained, and is not, therefore, an existing lien upon the land by the statute.   The judgment recovered upon such mortgage in a suit against the husband alone, is equally invalid as a lien.

II.   When the homestead right is extinguished by a deed of conveyance which is duly signed and acknowledged by the husband and wife, the title to the land by the same deed absolutely passes to and vests in the grantee, discharged alike of the homestead right and of all liability to sale upon the foreclosure of a previously executed mortgage of the husband alone, or upon a judgment recovered upon such mortgage. (*Dickson* v. *Chorn*, 6 Iowa, 30; *Floyd* v. *Mosier*, 1 Id. 514.)

FIELD, C. J. delivered the opinion of the Court—COPE, J. concurring.

This is a suit to quiet the title to certain premises situated within the

city of San Francisco, and grows out of the following facts: In 1853, the defendant, Norton, was the owner of a fifty vara lot in the city, and having erected a dwelling house thereon, occupied it with his family, claiming the property as his homestead. In July of that year, he executed a mortgage upon the premises to the defendant, Barker, to secure the payment of his promissory note of $4,000, with interest. In November following, he executed a second mortgage upon the same premises to the defendants, Drexel, Sather & Church, to secure the payment of another note for the like sum of $4,000 with interest. Both mortgages were executed without the signature of the wife. After the maturity of the notes, the mortgagees instituted proceedings for the foreclosure of the mortgages and the sale of the premises, and obtained the usual judgments in such cases. The judgment in favor of Drexel, Sather & Church was rendered in March, 1855, and the judgment in favor of Barker was rendered in April, 1855. In July following, Norton filed a petition in insolvency in the District Court of the Fourth District, praying to be discharged from his debts and liabilities, and in the final decree, rendered upon the proceedings consequent thereon, in August, 1855, the Court set apart the fifty vara lot referred to, with the house thereon, as a homestead, for the use of the petitioner and his family, without mentioning the mortgages as incumbrances upon the property.

In November, 1855, Norton and his wife conveyed by their joint deed, for the consideration of $3,500, a portion of the lot to the plaintiff, who brings the present suit to quiet his title against the claims of the defendants, asserted by virtue of their respective mortgages and judgments thereon.

Upon these facts, three questions are presented for consideration: 1st. Whether the mortgages to the defendants were absolutely void, or only invalid against the assertion of the homestead right; 2d. Whether, if not absolutely void, the liens of the mortgages were lost or impaired by the decree in insolvency; and 3d. Whether, if the liens were not lost or impaired, the conveyance of the premises to the plaintiff removed the restriction of the statute, and rendered them subject to forced sale under the judgments recovered upon the mortgages.

1. The first question was determined by the decision in *Gee* v. *Moore*, rendered at the October term. In that case we had occasion to consider the nature of the estate which the husband possesses in the homestead premises, and the restraint imposed by the Act of 1851 upon its aliena-

tion.   We there held that if the premises were the separate property of the husband, or the common property of both husband and wife, before they became a homestead, they continued such separate or common property afterwards; that neither the Constitution or the statute recognized any estate in the wife, but on the contrary the provisions of both were framed upon the idea that it was out of the property of the husband, or at least common property, that the homestead was to be carved; that the Constitution only required legislation exempting the property from forced sale, and did not look to legislation in restraint of voluntary alienation; and that the statute, in this respect, went beyond the constitutional provision.   " It is the homestead and other property of the *head* of the family," was our language, " which is, by the Constitution, to be protected from forced sale.   It is the alienation by the *owner*, if a married man, which the statute declares shall be invalid without the signature of the wife.   The power of alienation, and not the nature of the husband's estate, is thus affected.   And this power is restricted only so far as it may be necessary for the protection of the homestead.   The invalidity only goes to the extent essential to this object.   The husband can neither mortgage, sell, or otherwise alienate the homestead, without the signature of the wife, so as to deprive themselves of the benefit of the humane and wise provisions of the law. For this purpose the restriction was designed—none other.   Subject to the protection thus extended, the absolute power of the husband continues."

In that case the plaintiff had executed a conveyance of the homestead, with the signature of his wife to the deed, but without her acknowledgment; the instrument was treated, therefore, as his sole deed, and we decided that the estate passed to the grantee by the conveyance, subject to the right of the husband and wife to enjoy and use the premises as a homestead until another homestead was acquired, or their character as such homestead was otherwise gone; and that, upon the death of the wife without issue, the premises ceased to be a homestead, and the purchaser became entitled to the possession.   In accordance with the views there expressed, we must hold that the mortgages in the present case were not absolutely void, but were invalid only to the extent required for the protection of the husband and wife in the enjoyment of their homestead rights.   All power over the property, not inconsistent with the purposes of security and protection intended by the statute,

15

could be freely exercised by the husband—in whom alone the estate was vested.

In *Stewart* v. *Mackey*, (16 Texas, 56) the Supreme Court of Texas held that a mortgage upon homestead premises, ineffectual at the time of its execution, could be enforced subsequently, after the homestead had been abandoned and another homestead acquired. "The entire object," said the Court, "of the law and Constitution, is to secure a homestead, and no infringement upon the husband's rights of property, except such as may be necessary for the object designed, is intended by the law or is to be presumed." And again: "There appears to be no necessity to encroach upon the husband's right of alienation further than may be necessary to secure these objects, nor to prohibit a creditor from taking a mortgage from the husband, subject to the contingency that the homestead may not be changed, or that the wife may not assent, and that in the mean time his claim may be barred by the Statute of Limitations," etc. The effect, then, of the sole execution on the mortgages in question by the husband, whilst the premises retained the character of homestead, was simply to postpone the claims arising thereunder to the homestead rights. (*Guiod* v. *Guiod*, 14 Cal. 506.)

In thus ruling we refer, of course, to the provisions of the Act of 1851, as they stood previous to the amendments of 1860. It was with reference to those provisions that the rights asserted in *Gee* v. *Moore* were considered, and it is by reference to them that the rights of the defendants in the present case are to be determined. The amendments mentioned materially change those provisions, and render any mortgage hereafter of the homestead, except to secure or pay the purchase money, invalid for any purpose whatever.

2. The decree in insolvency did not discharge or impair the lien of the mortgages. The mortgagees had acquired vested rights in the property for the satisfaction of their claims, and those rights could not be thus divested. Nor are any such consequences contemplated by the Insolvent Act, but on the contrary, they are expressly provided against. The property of the insolvent is to be surrendered to his creditors, but the proviso to the thirty-sixth section of the act declares that "all legal mortgages and liens, *bona fide*, existing on such property at the time of the surrender, as aforesaid, shall remain good and valid, and may be enforced in the same manner as though no such surrender had been made." The decree, therefore, setting apart the premises as a homestead for the benefit of the petitioner and his family, left the premises subject to the same liens which previously existed.

3. The mortgages being invalid only against the assertion of the homestead rights of the husband and wife, could be enforced, by the judgments recovered thereon, whenever those rights were relinquished. The joint conveyance of Norton and wife operated necessarily as such relinquishment, equally as though a new homestead had been acquired, or the premises had been converted from the residence of the family to purposes of commerce, trade, or manufacture. It transferred to the plaintiff the entire estate in the property, and that being gone, the grantors could of course subsequently no more assert any homestead rights in the premises, than they could in premises to which they had always been strangers. The homestead rights were not transferred by the conveyance. Such rights may be released and abandoned, but they are, in their nature, incapable of sale and transfer. The exemption of the property from forced sale is the personal right of both husband and wife, and the restraint upon the husband's power of alienation is the personal right of the wife alone, and they cannot be assigned to others. The conveyance then to the plaintiff passed to him whatever estate the grantors at the time possessed. That estate was subject to the lien of the mortgages, incapable of enforcement, however, so long as the premises were subject to the homestead rights of the grantors. The conveyance, in transferring the estate, necessarily operated as a relinquishment of those rights; and the inhibition against the enforcement of the mortgages thereupon ceased.

A statute of Wisconsin, like the statute of this State, exempts the homestead from forced sale on execution or other final process, yet in *Hoyt* v. *Howe* (3 Wis. 752) the Supreme Court of that State held, that a judgment recovered against the owner of premises, whilst they were occupied by him as a homestead, became a lien thereon; that the lien could not be enforced while the premises remained the homestead, but so soon as their homestead character was gone, they became subject to sale under the judgment. " To hold the contrary," said the Court, " would be to maintain that property which is bound by and subject to a judgment—and only exempted from sale to satisfy the judgment by means of its peculiar character—when it loses its character with the consent and by the act of its owner, is nevertheless still exempt from sale. We are not aware of any legal principle, nor of any fair mode of reasoning which can be resorted to for the purpose of establishing this conclusion."

In this case from Wisconsin, the judgment had passed against the

owner of the homestead. Afterwards, by deed executed by him and wife, the premises were conveyed to the plaintiff. After the conveyance, the premises were sold under execution upon the judgment, and purchased by the judgment creditor. The grantees in the conveyance thereupon filed a bill to quiet their title against the claim of the purchaser at Sheriff's sale. The Court held, as we have stated, that the lien of the judgment was effectual, and could be enforced when the homestead right was relinquished—and also, in effect, that the conveyance of the property by the husband and wife was a voluntary relinquishment of such right; and, therefore, affirmed the judgment dismissing the bill.

In this State, a judgment cannot become a lien upon the homestead premises. It can become a lien only upon the real property of the judgment debtor which is "not exempt from execution"—that is, which cannot be subjected to forced sale. Such is the provision of the statute, and the lien is the creature of statute. (Civil Practice Act, sec. 204.) The judgment, therefore, in the Wisconsin case, in creating a lien upon the property, was like the mortgages of defendants, and the decision in that case covers the questions in the case at bar, were it necessary to cite authority for their disposition. (See also, *Chamberlain* v. *Lyell*, 3 Mich. 448; *Allen* v. *Cook*, 26 Barb. 374; *Howe* v. *Adams*, 28 Vt. 541.)

The judgment must be reversed, and the Court below directed to dismiss the suit, and it is so ordered.