JOHN McQUADE v. ANNA ELOISE WHALEY, AND THOMAS WHALEY et als.

HOMESTEAD.—The doctrine laid down in *Gee* v. *Moore*, 14 Cal. 477; and *Brennan* v. *Wallace*, 25 Cal. 114; that the husband and wife were not joint tenants in the homestead, but that the surviving wife took the homestead not by right of survivorship, but as property set apart by law from the husband's estate for her benefit, applied only to the Homestead Law as it existed prior to the amendment of 1860.

IDEM.—The Homestead Law passed in 1860 must be considered *in pari materia* with the provisions of the Act of 1851.

JOINT TENANCY IN HOMESTEAD.—Even if the Homestead Act of 1860 makes the husband and wife joint tenants in homesteads acquired under the Act of 1851, such joint tenancy does not become perfected until a declaration of homestead is filed, as required by the Acts of 1860 and 1861.

IDEM.—If a homestead was acquired under the Act of 1851, and no declaration of homestead was made and recorded, as required by the Acts of 1860 and 1861, before the time for filing such declaration had expired, the title to the homestead rested where it was before the premises were appropriated as a homestead.

CONVEYANCE OF HOMESTEAD.—A conveyance made by the husband alone of a homestead acquired under the Act of 1851 was valid, subject to the right of the husband and wife to hold the property as a homestead until it ceased to be such, and a failure to make and record a declaration of homestead under the Acts of 1860 and 1861, was an abandonment of the homestead, and the grantee then became entitled to its actual possession and enjoyment.

IDEM.—If husband and wife acquired a homestead under the Act of 1851, and the husband alone made a conveyance of the property and then died before the time expired for making and recording a declaration, as required by the Acts of 1860 and 1861, and no such declaration was made and recorded, upon the expiration of the time for making the same the grantee became entitled to the actual possession and enjoyment of the property.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

The facts are stated in the opinion of the Court.

*John Satterlee*, for Appellant. The premises were the common property of husband and wife, and became, on the death of the husband, the sole property of the wife. (Sec. 11 of

Act defining the rights of husband and wife.)    The last clause of section one of the Homestead Act of 1860 provides that " all homesteads heretofore appropriated and acquired by husband and wife under the Act to which this is amendatory, shall be deemed to be held by such husband and wife in *joint tenancy*."   The homestead rights acquired previous to the husband's leaving the State had not been lost or abandoned when the statute of 1860 was passed.   Under this statute, therefore, the wife, on the death of the husband, took the entire property as surviving *joint tenant*.   And this estate was vested in her *absolutely, in fee simple*, immediately on the death of the husband, irrespective of all question of homestead. That portion of the statute of 1860 which requires a declaration of homestead to be filed, has no applicability to the case ; for, the husband having died before the expiration of the year mentioned in section five of the Act, and the plaintiff having thereby become the sole owner in fee, it became a matter of indifference whether the premises thereafter continued subject to homestead rights or not.   Whether the rule was correctly applied in *Gee* v. *Moore* or not, the case has no bearing on the case at bar.   Besides, the Court admitted and held that the husband could not deprive the wife of the homestead by his deed or mortgage without providing her with another homestead.   In no case has this Court held that a husband could make a valid deed of the homestead without providing his wife with another.

*Patterson, Wallace & Stow*, for Respondents.


By the Court, Currey, C. J. :

This action was brought on the 8th of October, 1864, to recover a lot of land in the City of San Francisco.   It is averred in the complaint that in 1852 the lot was the common property of Hugh Casement and Emily, his wife, and so continued to be until the month of May, 1861, when the husband died, and that upon that event the lot became the abso-

lute property of the said Emily.    That before the commence-
ment of the action the plaintiff became the owner of the lot
by conveyance from said Emily.    That the defendants have
unlawfully entered into and had the possession of the prop-
erty, which they held without right, adversely to the plain-
tiff.   The answer of the defendants denies all the material
allegations of the complaint, and further sets forth facts on
which they claim affirmative relief.    The cause came on for
trial before the Court without a jury.    The plaintiff's counsel,
in opening his case, made the following statement :

" Prior to the year 1852, Hugh Casement, Jr., intermarried
with Emily Edwards, who is still living.    There was no issue
of such marriage.    In the year 1852, one hundred vara lot
Number Two Hundred and Ninety, in San Francisco, was, for
a valuable consideration, conveyed by the then owner thereof
to said Hugh Casement, Jr., who in the same year erected a
house thereon, and with his said wife actually resided upon it,
and built a fence around said lot, and erected outhouses
thereon.    In 1854, Hugh Casement, Jr., while still residing
on the lot with his said wife, mortgaged the lot to Henry W.
Jones.    His said wife did not execute said mortgage.    After-
ward, Casement, still residing on the lot with his said wife,
conveyed the lot, his wife not joining in the deed, to Spencer
Thompson, who conveyed it to Jones, in satisfaction of Jones'
mortgage.    In 1855 Casement departed from the State of
California, leaving his said wife residing upon said lot and
actually occupying it and claiming it as a homestead.    In the
same year Jones obtained from the wife Emily, who was still
living on the lot, a deed to him of her interest in said lot ;
which deed was acknowledged before a Notary Public as a
*feme sole*, and was signed and executed by her by the name of
' Emily Edwards,' sometimes called Casement, and also as a
*feme covert*.    The deed was executed, acknowledged and deliv-
ered on the 28th day of June, 1855, for the consideration of
four hundred and fifty dollars, then paid to her, and was wit-
nessed by plaintiff's attorney, Satterlee.    The wife Emily still

continued to reside upon and occupy said lot as a homestead until the latter part of the year 1856, when she went to Australia to see her husband, but immediately returned to San Francisco. Upon her return she found Jones in the possession of said lot. Subsequently, Jones conveyed to Walter Ringgold, through whom the defendants claim said lot and were in possession at the time of the commencement of this suit, and still remain in possession. Hugh Casement, Jr., the husband, never provided his wife Emily with any other homestead. Casement, the husband, died in Australia, sometime between March and July, in the year 1861. The wife, Emily, was then in San Francisco. She has not married again. She has had no children, and has not been the head of a family since her husband's death. No declaration of a homestead was ever made and recorded. On the 13th day of October, 1862, the said Emily conveyed an undivided half of said lot of land to John Satterlee, who afterwards, and before the commencement of this suit, conveyed his interest to the plaintiff. The plaintiff claims that said lot was the homestead of Casement, and his said wife; that she never abandoned the homestead; that her husband never provided her with any other homestead, and that her deed to Jones was void."

The counsel for defendant moved the Court to nonsuit the plaintiff on his opening, upon the following grounds, viz: that according to the plaintiff's own statement no declaration of homestead had ever been made by Emily Casement or her husband, and that, therefore, she has no right whatever in the property.

The Court granted the motion and nonsuited plaintiff on the ground that no declaration of homestead was made, filed and recorded. To which decision the counsel for plaintiff then and there duly excepted.

The plaintiff in due time moved the Court to set aside the nonsuit and to grant a new trial, on the ground that the Court

67

erred in nonsuiting the plaintiff. On this motion the plaintiff's counsel made the following points:

First—The premises were a homestead, which was not abandoned.

Second—The homestead continued, because Casement did not provide his wife with another homestead.

Third—Casement's mortgage and deed were void because his wife did not join in them.

Fourth—Emily Casement's deed was void because her husband did not join with her; because he had not been absent from the State a year; and because she did not acknowledge the execution of the deed before a District Judge.

Fifth—At the death of Casement the time for making and recording a declaration of homestead had not expired; then the homestead became absolutely the sole property of the wife in fee. Thereafter she held it as absolute owner, by reason of its having been homestead at Casement's death, and after that there was no necessity for making a declaration of homestead, and she could not, because she was no longer married and was the head of a family.

The Court denied the plaintiff's motion, and thereafter the appeal in this case was taken from the order denying the motion for a new trial.

Was the plaintiff entitled to recover upon the facts stated in the opening of his counsel, provided they were proved upon the trial? These facts as presented are to be taken as literally true, and as to their sufficiency or insufficiency rests the cause.

In 1852 the premises in controversy became the homestead of Casement and his wife, and were such in 1854, when he executed a mortgage thereon to Jones, and also when he thereafter executed a deed of conveyance of the same premises to Thompson. (*Cook* v. *McChristian*, 4 Cal. 23; *Taylor* v. *Hargous*, 4 Id. 268; *Reynolds* v. *Pixley*, 6 Id. 166.) The mortgage and deed executed by the husband were not binding on his wife, because she did not join in their execution. (Laws 1851, p. 296, Sec. 2; *Pease* v. *Barbiers*, 10 Cal. 440.)

In a number of cases decided between the years 1851 and

1859 it was held that the homestead was an estate held, by the husband and wife in joint tenancy, and of consequence it became the absolute property of the survivor upon the death of the other. But in *Gee* v. *Moore*, 14 Cal. 477, these decisions were overruled on this point, and it was there declared that the doctrine that the estate was one of joint tenancy was not warranted by any language of the Constitution or the statute. The Court say: " The estate rests where it existed before the premises were appropriated as a homestead. The appropriation of them confers a right upon the wife to insist that their character as a homestead shall continue until she consents to the alienation or another homestead is provided, or they are otherwise abandoned. The wife, if surviving her husband, takes the homestead, not by right of any survivorship arising from the alleged joint tenancy, but as property set apart by law from her husband's estate for her benefit and that of his children, if there be any." The doctrine of the case here cited was affirmed in *Bowman* v. *Norton*, 16 Cal. 216, and was followed in *Brennan* v. *Wallace*, 25 Cal. 114. These several cases had reference to the homestead estate as created under the law as it existed prior to the passage of the Act of.1860, and must be deemed as settling the construction relating to the subject as then existing. The Act of 1860, (Laws 1860, p. 311,) which was amendatory of the Act of 1851, provided that a homestead might be selected by either husband or wife, or by both of them, or other head of a family, by declaration in writing of intention so to do. Such declaration was required to be signed, and acknowledged and recorded; and the Act then provided that " from and after the filing for record of said declaration, the husband and wife shall be deemed to hold said homestead as joint tenants;" and then it is further provided that " all homesteads heretofore appropriated and acquired by husband and wife under the Act to which this is amendatory, shall be deemed to be held by such husband and wife in joint tenancy."

We have seen that by the decisions in the cases of *Gee* v. *Moore*, and *Bowman* v. *Norton*, it was held that the relation

of husband and wife in respect to the homestead appropriated and acquired under the Act of 1851, was not a joint tenancy; and regarding these decisions as declaring the law correctly, we are brought to the inquiry whether, by the Act of 1860, that relation was created as to homesteads before then acquired, and if so, whether, by force of the statute, such a change was wrought that each party became invested with an indefeasible estate in the homestead as joint tenants, discharged of all conditions. By the fifth section of the Act of 1860 it was declared that " all parties entitled to homesteads under the Act to which this Act is amendatory shall be entitled to the benefit of the provisions of this Act; and such homesteads shall be protected to the same extent and in the same manner as if acquired under the provisions of this Act. And no rights acquired under said Act shall be lost or in any way impaired by reason of any provisions contained in this Act; provided, that all parties holding and claiming homesteads under the provisions of said Act shall have one year from and after the passage of this Act in which to prepare and file for record the declaration required by section first of this Act; and in making such declaration it shall not be necessary, in cases where there has been a prior actual occupancy by the family of the homestead, and a subsequent temporary abandonment, to allege the actual residence, at the time of such declaration, on the premises;" and then follows a provision that " in case there be no such declaration filed within one year, the homestead shall be deemed to have been abandoned." This Act was approved on the 28th of April, 1860, and took effect from and after its passage. By an Act of 1861 the time for preparing and filing for record the declaration of homestead as provided in the fifth section of the Act of 1860, was extended to and including the 28th of April, 1862. (Laws 1861, p. 232.)

The amendments contained in the Act of 1860 must be considered together and *in pari materia* with the provisions of the Act of 1851, in order to ascertain what rights and interests were brought into being by force of these Acts of the Legislature acting upon given conditions precedent to their possible

operation. The first section of the Act of 1860 provides that all homesteads heretofore appropriated and acquired by husband and wife under the Act of 1851 shall be deemed to be held by such husband and wife in joint tenancy. Had the Act stopped with this provision it might well be said, first assuming that the Legislature had the power thus to create a particular estate, that by this language a joint tenancy was created in respect to all homesteads then acquired and existing under the Act of 1851; but it does not stop here. The fifth section provides that those entitled to homesteads under the Act of 1851, shall be entitled to the benefits of the Act of 1860, and that such homesteads shall be protected to the same extent and in the same manner as if acquired under the provisions of the Act of 1860; that is, by making a declaration of intention to claim the premises selected as a homestead, and signing, acknowledging and recording such declaration; provided, however, that if any person thus claiming a homestead under the Act of 1851 makes no such declaration in the mode and within the term prescribed, the homestead which he or she had under the Act of 1851 shall be deemed to have been abandoned.

By the Act of 1860 it was declared that the homestead, which before then was not an estate held in joint tenancy, should be deemed to be held by the husband and wife in joint tenancy; provided, however, that in respect to such homestead the prescribed declaration was made, signed, acknowledged and recorded. If the Legislature had the power thus to create a particular estate, then, as the creating power, the same body had the power to prescribe the conditions essential to its creation, and also to declare what consequences should follow by an omission to perform them.

That no declaration of homestead was ever made and recorded was an omission of plaintiff's counsel in his opening, and upon this admission, with others made at the same time in respect to the conveyance of the property by Hugh Casement, the husband, the Court nonsuited the plaintiff. According to the cases of *Gee* v. *Moore*, and *Bowman* v. *Norton*, the mortgage

executed by Casement to Jones and the conveyance of the premises to Thompson were not void. The conveyance existed as valid, subject to the right of the husband and wife to the property as a homestead, until its character as such had ceased. And when it ceased the defendants who acquired it by conveyances from Casement's grantee became entitled to its actual possession and enjoyment.

It is argued on behalf of the plaintiff that as the husband died after the passage of the Act of 1860, and before the time had elapsed within which a declaration of homestead might be made, acknowledged and recorded, the wife took the whole property as surviving joint tenant upon the death of the husband, and then became the owner in fee simple absolute of the premises; and that, as a consequence of the concurrence of these circumstances, there was no necessity to make and record a declaration of homestead in order to secure to her the property which already belonged to her as owner thereof in fee. We have already considered the ground on which, if we are right in our interpretation of the homestead laws, it must readily appear wherein the argument of the learned counsel is at fault.

We are of the opinion the nonsuit was properly granted.

The judgment must be affirmed, and it is so ordered.


Shafter, J., concurring specially:

In my judgment the Act of 1860 has no bearing upon the rights of the parties. That Act was passed some five years after Casement conveyed to Thompson, under whom defendants claim, and their rights must therefore depend upon the Act of 1851, and be governed by it. According to the decision in *Gee* v. *Moore*, 14 Cal. 474, the legal title to the premises is presumed to have been in the husband in the first instance, or the common property of the spouse, and in either alternative the husband's deed to Thompson passed the title to the grantee, "subject only to the use and occupation by the husband and wife until another homestead should be

acquired, or until the character of the premises as a homestead should be otherwise lost." The homestead was lost by the death of the husband, there being no legitimate children of the marriage. The homestead depends upon the family, not only for its origin, but for its continued existence, and the death of either husband or wife, there being no children, puts an end to the family relation by consequence. The fifteenth section of Article XI of the Constitution provides that " the Legislature shall protect by law from forced sale a certain portion of the homestead and other property of all heads of families." It was held in *Revalk* v. *Kraemer*, 8 Cal. 71, that " the leading idea upon which the Constitution and statute are both predicated, is the protection of the family. To carry out this intent, the homestead of the head of the family is protected from forced sale. Any individual of either sex may be the head of a family. It is not necessary that the head of the family should be a married person. But unless the person is the head of the family, the right of homestead cannot exist. And cannot the same person, at one time, be the head of a family, and not at another? And if the privilege is an incident to a certain state, and that state itself ceases, why should not the incident fall with it? As the primary object of the law was the protection of the family, when the family ceases to exist the reason for the privilege is gone; and why should not the privilege itself also cease? As the end contemplated by the law can no longer be attained, why should the means be preserved when they are no more wanted? As the law will not allow an individual the right of homestead before he becomes the head of a family, why should it allow him the right after he ceases to be such? The very reason why the law will not allow it in the one case is equally applicable in the other. When an individual has not been, or has ceased to be, the head of a family, the law cannot anticipate that he will thereafter become such in either case. When he does, in fact, become the head of a family, then the law protects him for their benefit. He is the representative of the family. But when there is no family to pro-

tect, will the law defeat the just claims of creditors for the purpose of accomplishing no beneficial end? It is true the party once had a family, and he also once had protection for that family; but since the family has ceased to exist, the protection is not needed. The law intended to protect individuals while bearing certain relations to each other. When that relation ceases, the cause of the protection is gone. The reason ceasing, the rule ceases. The privilege and responsibility must go together. One is rightfully dependent upon the other. When the individual has no longer the care of a family, the law should not still protect him as if he had; he should only be protected as others are who are at present in the same state. The law does not look to his past or future, but to his present condition." To show how completely the homestead right is made by the statute to depend upon the family relation, we have but to advert to the proviso to the tenth section. It is as follows: "Provided that the exemption, as provided in this section, shall not extend to unmarried persons, except when they have charge of minor brothers, or sisters, or both, or brothers' or sisters' minor children, or a mother, or unmarried sisters living in the house with them." According to this, though a family may be organized out of diverse elements, still the homestead is made to depend upon the family, and is coeval with it.

The plaintiff cannot claim that the wife took the whole lot by survivorship on the ground of joint tenancy, for that relation never existed between the spouses prior to the conveyance to Thompson. Nor can it be claimed that the wife took the title under the eleventh section of the Act relating to husband and wife, for the reason that the husband in his lifetime had so conveyed it. Nor could she take any interest under the statute regulating descents, for the same reason. Nor could she take under the tenth section of the Homestead Act of 1851. By one of the clauses of that section " the homestead and other property exempt from forced sale, upon the death of the head of the family, shall be set apart by the Probate Court for the benefit of the surviving wife and his own

legitimate children ; and in case of no surviving wife, or of his own legitimate children, for the next heirs at law." Here are two predicaments contemplated : First—The death of the husband leaving a widow and legitimate children. In such case the homestead is to be set apart by the Probate Court for the joint benefit of the mother and children. Second—If the wife survives and there are no children, or if the children survive and the wife does not, then, there being no organized family, by the conditions the property is confounded with the mass of the estate and goes to the " next heirs at law " as such. They would take, if they took at all, by descent and subject, of course, to all the incidents connected with titles so acquired or claimed. Here the title of the husband, or of the spouses, was lost by the deed to Thompson, and in the face of that conveyance no title by heirship can be successfully asserted for that reason. But if that difficulty is not insuperable in itself, then it can be overcome only by the Probate Court setting the lot apart for the benefit of the heirs. But the Probate Court has neither interposed nor been asked to interpose in the matter. *Non constat* that the heirs desired to come between the property and the creditors, or if there were no creditors, then between the property and the purchasers in good faith. That they did not desire it sufficiently appears from the fact that they have not done it.

Sanderson, J., concurring specially :

I concur in the judgment.

Mr. Justice Sawyer expressed no opinion.