## GEE v. MOORE.

A COVENANT of non-claim in a deed amounts to the ordinary covenant of warranty, and operates, equally, as an estoppel.

But this covenant is confined to the *estate granted*, and where that is " the right, title, and interest," of the grantor, instead of the land itself, the covenant does not estop him from setting up an after-acquired interest.

The Constitution contemplates legislation to exempt the homestead from forced sale, but not to restrain voluntary alienation.    The statute goes beyond the Constitution.

The husband alone has the legal title to the homestead, and his absolute power of alienation is restricted only so far as is necessary to protect the homestead.

The Constitution and statute are based upon the idea that the homestead is to be carved out of the property of the husband, or at least out of common property.

A sale of the homestead by the husband alone, vests the estate in the vendee, subject only to the use and occupation by husband and wife until another homestead is acquired, or until the character of the premises as a homestead is otherwise gone.

In such case, upon the death of the wife, without issue living, the premises cease to be a homestead, and the vendee of the husband is entitled to possession.

The death of the wife, after suit brought by herself and husband for the homestead, defeats a recovery by the husband, though the right to recover existed at the commencement of the suit.

*Taylor* v. *Hargous*, 4 Cal. 273; *Poole* v. *Gerard*, 6 Id. 71; *Revalk* v. *Kraemer*, 8 Id. 73 —overruled.

The appropriation of premises, as a homestead, gives the wife a right to insist that their character as a homestead shall continue until she consents to their alienation, or another homestead is provided, or they are otherwise abandoned.

The wife, if surviving her husband, takes the homestead as property set apart by law from her husband's estate, for her benefit, and that of her children, if there be any.

APPEAL from the Twelfth District.

Plaintiff had judgment below, and defendant appeals.

*F. J. Lippitt,* for Appellant.

*Harmon & Labatt,* for Respondent.

FIELD, C. J. delivered the opinion of the Court—BALDWIN, J. and COPE, J. concurring.

The decision of this case involves a consideration of the effect of the covenant of non-claim contained in the conveyance of the plaintiff to Elmore, under whom the defendant holds a portion of the premises in controversy, and the nature of the estate of the husband in the homestead and the restraints upon its alienation. The premises were purchased by the plaintiff in 1852, and were occupied by himself and wife as a homestead at the date of his conveyance to Elmore, in March, 1853. The consideration of the conveyance was fifteen hundred dollars—the full value of the premises at the time. The wife added her signature to the instrument; but as she never acknowledged its execution, it must be treated as the sole deed of the husband. It purports that the plaintiff bargained, sold, and quitclaimed, " all his right, title, interest, estate, claim, and demand," to the premises in controversy, to Elmore, the grantee therein named, and has the following *habendum* clause : " To have and to hold the above granted premises and the privileges and appurtenances thereto belonging, to the said Samuel O. Elmore, his heirs and assigns forever, so that neither I, the said Lewis Gee, nor my heirs, or any person or persons, claiming from or under me shall have, claim, or demand, any right or title to the aforesaid premises, or any part or parcel thereof." In June, 1858, the plaintiff and his wife instituted the present action to recover possession of the premises thus conveyed. A few hours after the service of the summons the wife died leaving no children. A portion of the premises are held by the defendant under a deed executed in December, 1857, upon a sale for unpaid taxes, but it is unnecessary to notice this branch of the case, as no point is made upon it by either party.

The clause in the conveyance following the *habendum*, is in effect a covenant of non-claim, though the usual words of a covenant are wanting. The words used clearly indicate an engagement of the grantor that neither he, nor his heirs, nor any parties under or through him, will ever assert any right to the estate conveyed. Such covenant is generally held to amount to the ordinary covenant of warranty, and to operate equally by way of estoppel. It was so held in *Gibbs* v. *Thayer*, (6 Cush. 32); in *Newcomb* v. *Presbury*, (8 Met. 406,) and in numerous other cases. Giving it this effect it must still be confined to the estate con-

31

veyed. The deed does not purport to convey the premises in fee simple absolute, so as to bring the instrument within the provision of the thirty-third section of our statute, concerning conveyances. It only purports to pass all the right, title, and estate, which the grantor possessed in the land, and does not operate upon interests subsequently acquired. If the plaintiff at the time possessed any estate in the premises, whether in fee, or for life, or for years, the same vested by the conveyance, and the effect of the covenant is only to estop him and parties under him, from asserting any claim to such estate. In other words, the terms of the deed denote that the grantor only intended to transfer the estate which he at the time possessed, and the covenant is restrained by the estate conveyed.

The inquiry then arises as to the estate which the plaintiff possessed in the homestead premises at the execution of his conveyance, and the restraint imposed by the law upon its alienation.

The Constitution provides, in the 15th Section of Art. 11, that "the Legislature shall protect, by law, from forced sale, a certain portion of the homestead and other property of all heads of families." It only requires legislation exempting the property from forced sale. It does not look to legislation in restraint of voluntary alienation. The statute goes beyond the constitutional provision. It not only exempts the homestead from forced sale, but declares that no mortgage, sale, or alienation, of any kind, by the owner, if a married man, shall be valid without the signature and acknowledgment of the wife, if she be a resident of the State. Neither the Constitution or the statute recognize any estate in the wife; on the contrary, it is clear that both were framed upon the idea that it was out of the property of the husband, or at least, common property, that the homestead was to be carved. It is the homestead and other property of the *head* of the family, which is by the Constitution, to be protected from forced sale. It is the alienation by the *owner*, if a married man, which the statute declares shall be invalid without the signature of the wife. The power of alienation, and not the nature of the husband's estate, is thus affected. And this power is restricted only so far as it may be necessary for the protection of the homestead. The invalidity only goes to the extent essential to this object. The husband can neither mortgage, sell, or otherwise

Gee *v.* Moore.

alienate, the homestead, without the signature of the wife, so as to deprive themselves of the benefit of the humane and wise provisions of the law. For this purpose, the restriction was designed, none other. Subject to the protection thus extended, the absolute power of the husband continues. Every statute must be construed with reference to the objects contemplated by its provisions, so as to effectuate the intention of the Legislature. To this end, the term "void," found in Acts of Parliament and statutes of the different States, have been, in numerous instances, construed to mean voidable only. Such decisions, says Parker, C. J. in *Smith* v. *Saxton*, (6 Pick. 486,) " are founded in good sense and reason, and conform to the intention of the Legislature in their use of the term." Thus, by a statute of Massachusetts of 1783, all mortgages on usurious considerations are declared to be *utterly void*, and yet the Supreme Court of that State held, in *Green* v. *Kemp*, (13 Mass. 515,) that such a mortgage was void only as against the mortgagor, and those who may lawfully hold the estate under him, and that a purchaser of the mere equity of redemption, which is not there considered as the real and beneficial estate, could not avoid the mortgage by plea or proof of usury. "The statute," says the Court, "must have a reasonable construction and in conformity to its general object, which was to protect debtors from the enforcement of unconscionable demands."

In the Constitution of Texas the following provision exists: " The Legislature shall have power to protect by law from forced sale a certain portion of the property of all heads of families. The homestead of a family not to exceed two hundred acres of land, (not included in a town or city,) or any town or city lot or lots, in value not to exceed two thousand dollars, shall not be subject to forced sale, for any debts hereafter contracted, nor shall the owner, if a married man, be at liberty to alienate the same, unless by the consent of the wife, in such manner as the Legislature may hereafter point out." (Art. 7, Sec. 22.) The clause in our statute declaring the alienation without the signature of the wife invalid, is not more expressive than the language in the Constitution of Texas, yet the Supreme Court of that State, in *Sampson et al.* v. *Williamson*, (6 Texas, 109,) after quoting the section, said: "By this provision the homestead is

exempted from forced sale; but its voluntary alienation is not inhibited. The right of disposition—certainly one of the most valuable of the incidents of ownership—is restricted only by the necessity, if the head of the family be married, of obtaining the consent of the wife, in the form prescribed by law; and the owner, having the legal, and it has been frequently termed, the natural, right, of disposing of his property, can exercise all such powers over the subject matter, as are not inconsistent with the plain and obvious intent of the law and Constitution."

In *Stewart* v. *Mackay,* (16 Texas, 56,) the question was presented whether a mortgage upon the homestead, though ineffectual at the time of its execution, could be enforced subsequently after the homestead had been abandoned and another acquired. In holding that the mortgage could be enforced, the Court said : "Were it not for the provision of the Constitution, that the owner of a homestead, if a married man, should not be at liberty to alienate the same unless by consent of the wife, the husband would have the unquestionable power to dispose of it at pleasure. His right, his absolute title, in the property, is not affected, but his power of alienation is restricted, and for the distinct and specific purpose of securing a homestead to the family. To effect this purpose, the wife, if living, must be consulted before the sale, and this for many reasons which might be enumerated, but especially that she may not be deprived of one homestead without provision for the acquisition of another. The entire object of the law and the Constitution is to secure a homestead, and no infringement upon the husband's rights of property, except such as may be necessary for the object designed, is intended by the law or is to be presumed."

In the views here expressed we fully concur. If the premises are the separate property of the husband, or the common property of both husband and wife, before they become a homestead, they remain such separate or common property afterward; and the husband's absolute power of alienation is only restrained so far as may be necessary for the protection of the homestead, and no further. It follows that the estate of the defendant passed to Elmore by his conveyance of March, 1853, subject to the right of husband and wife to enjoy and use the premises as a homestead until another homestead was acquired, or their char-

acter as such homestead was otherwise gone.   Upon the death of the wife without issue living, the premises ceased to be a homestead, and the purchaser, Elmore, or those claiming under him, became thereupon entitled to the possession.   It is possible that but for the death of the wife, the recovery could be sustained, as no other homestead may have been acquired, and the premises may not have been otherwise abandoned.   However that may be, upon her death the right to the enjoyment and use of the premises as a homestead was gone.   Her death after suit brought cannot affect the question so far as the possession of the property is concerned.   The 256th Section of the Practice Act is conclusive on this point.   That section reads as follows : "In an action for the recovery of real property, where the plaintiff shows a right to recover at the time the action was commenced, but it appears his right has terminated during the pendency of the action, the verdict and judgment shall be according to the fact; and the plaintiff may recover damages for withholding the property."

We are aware of decisions of this Court holding different views from those expressed in this opinion.   Thus in *Taylor* v. *Hargous,* (4 Cal. 273,) it is said that as soon as a place, by the occupancy in good faith of the family, acquires the character of a homestead, the nature of the estate is changed without reference to the manner in which the title to the property originated, whether it was the separate estate of either husband or wife, or the common property of both.   "It is turned," says the Court, "into a sort of joint tenancy, with the right of survivorship, at least as between husband and wife, and this estate cannot be altered or destroyed except by the concurrence of both in the manner provided by law;" and the judgment of the Court below in that case adjudging the deed of the husband, without the signature of the wife, to be cancelled as null and void, was affirmed.

In *Poole* v. *Gerrard,* (6 Cal. 71,) and in *Revalk* v. *Kraemer,* (8 Id. 73,) the doctrine advanced in *Taylor* v. *Hargous,* as to the joint estate of the husband and wife with the right of survivorship is repeated.   This doctrine has never met the approbation of the profession, and is not warranted by any language of the Constitution or the statute.   There is nothing in the nature of the homestead right or privilege which justifies its designation

as such an estate.  The right or privilege has no single feature resembling a joint tenancy.  The estate rests where it existed before the premises were appropriated as a homestead.  The appropriation of them confers a right upon the wife to insist that their character as a homestead shall continue until she consents to the alienation, or another homestead is provided, or they are otherwise abandoned.  The wife, if surviving her husband, takes the homestead, not by virtue of any right of survivorship arising from the alleged joint tenancy, but as property set apart by law from her husband's estate, for her benefit and that of his children if there be any.  In the same way other property exempt from forced sale, is set apart to her.  (Homestead Act, Sec. 10; Act concerning Estates of Deceased Persons, Sec. 121.)

It follows from the views we have expressed, that the defendant was entitled to judgment upon the agreed statement of facts as to the entire property, and the judgment of the Court below must be reversed, and that Court directed to enter judgment in his favor.

Ordered accordingly.