[No. 871.]

## CHARLES D. SMITH ET AL., MINORS, BY WILLIAM H. SMITH, THEIR GUARDIAN, ·APPELLANTS, *v.* LOUISA SHRIEVES ET AL., RESPONDENTS.

HOMESTEAD LAW CONSTRUED—JOINT TENANCY.—In construing the homestead law of this state: *Held*, that when a declaration of homestead is filed, the property is held by the husband and wife as joint tenants, and that upon the death of either the homestead property vests absolutely in the survivor. (Beatty, J., dissenting.)

IDEM—WHEN NO DECLARATION IS FILED.—When no declaration has been filed upon the homestead property, no joint tenancy is created; in such case, if it was common property, one half vested in the wife upon the death of the husband, and the other half vested in the minor children of said deceased and his wife.

APPEAL from the District Court of the Second Judicial District, Ormsby County.

The facts appear in the opinion.

*Whitman & Wood,* for Appellants.

I. If appellant had any right of action, Harriet M. Smith was not a necessary party. (1 Comp. Laws, 1077.)

II. The present constitution and laws of Nevada, touching the matter at bar, are similar to the corresponding originals in California. (Const. Nev. art. 4, sec. 30; Comp. Laws, secs. 187–189, 602–609; Const. Cal. art. 11, sec. 15; Stats. Cal. 1851, p. 298, sec. 10, p. 463, secs. 121, 125; Wood's Digest, art. 2280–81, chap. 42, p. 483.) So, if there were any difficulty in the construction of the laws of Nevada, touching the subject in hand, which we deny, the court may be aided by the interpretation given by the supreme court of California. There, the construction for which we contend, that upon the death of a husband and father, the surviving wife and children take the homestead existing at the time of his death, or thereafter set apart by order of the probate court, as provided in sec. 607 Comp. Laws Nev. (*Wixom's Estate,* 35 Cal. 320; *Rich* v. *Tubbs,* 41 Id. 34.) It would seem, however, that there is, or should be, no difficulty in the construction of the statutes of this state, and that the natural and logical reading is in favor of our position.

The only stumbling-block is the phrase "joint tenants," occurring at the close of section 186, Comp. Laws, Nev. If this is to be taken in strict legal parlance, it must be admitted that the right of survivorship is a necessary element of such tenancy. And when technical words are used in a statute they are to be taken in a technical sense, unless it be evident, from surrounding context and the language of other statutes to be construed *in pari materia,* that such use was not intended. Also, having always regard to the legislative intent. (*Ormsby County* v. *State Nev.,* 6 Nev. 265; *Davis* v. *Cook,* 9 Id. 134; *State* v. *Rogers,* 10 Id. 320; *Odd Fell. Bank* v. *Quillen,* 11 Id. 109.)

Upon inspection of the homestead act (Comp. Laws, p. 60) it is evident that the phrase in question could not have been intended in its strict sense. As by the statute the homestead may be acquired by the act of either husband or

wife. (1 Comp. Laws, 186.) Once acquired, neither can alienate without the other. (1 Comp. Laws, 187.) Such is not a joint tenancy. (1 Washburn on Real Property, 643, sec. 5; p. 645, sec. 11; p. 647, sec. 17.)

*R. M. Clark* and *Wells & Stewart*, for Respondents.

I. The statute of Nevada approved March 7, 1865 (Stats. of Nev. 1864–5, 239), to define the rights of husband and wife, is *in pari materia*, and its provisions must be considered in connection with other statutes, in passing upon this case. The homestead property is not common property, for all common property, on dissolution of the community by the death of the husband, is equally subject to his debts, the family allowance, and the charges and expenses of administration. The homestead is not so subjected. (Stats. 1864–5, 240, sec. 11.)

II. The homestead, from and after filing the declaration for record, is held by the husband and wife as joint tenants. (1 Comp. Laws, 60, sec. 1.) Under the homestead act of California, passed in 1851, the supreme court of that state several times decided that the homestead was held in joint tenancy, with the right of survivorship, although the statute did not, in terms, provide that the property should be held by the husband and wife as joint tenants. (*Taylor* v. *Hargous*, 4 Cal. 268; *Poole* v. *Gerrard*, 6 Id. 71; *Rivalk* v. *Kramar*, 8 Id. 66.) These cases were overruled in *Gee* v. *Moore*, 14 Id. 472. The legislature, in 1860, amended the homestead act, by providing for the selection of a homestead, and that thereafter the husband and wife should be deemed to hold said homestead as joint tenants. This statute came before the court several times for interpretation, and was uniformly held to create a joint tenancy, with right of survivorship. (*McQuade* v. *Whaley*, 31 Cal. 526; *In re Est. of James*, 23 Id. 416; *Barber* v. *Babel*, 36 Id. 11.) The statute of Nevada of March 6, 1865, to exempt the homestead from forced sale, is an exact copy of the California homestead act of 1860, and was adopted after the California act had been there construed to create a joint tenancy, with right of survivorship, and must, therefore, be held to adopt,

here, the construction it had received there prior to its passage. (*Ash* v. *Parkinson*, 5 Nev. 15; *Hess* v. *Pegg*, 7 Id. 29; *People* v. *Coleman*, 4 Cal. 46; Cooley Const. Lim. 52.)

By the Court, LEONARD, J.:

The complaint in this action shows that all the plaintiffs are the legitimate minor children of Timothy G. Smith, deceased, and Harriet M. Smith, his wife; that Timothy G. died on or about December 17, 1867, at which time he was the owner, in the possession and entitled to the possession, of the property described in the complaint, an undivided one half of which is the subject of controversy; that during the life-time of said Timothy G., to wit: March 10, 1866, he selected as and for a homestead, all of said property except that portion thereof described as the south twenty-five feet of lots three and four, in block eighteen, and duly filed with the county recorder of Ormsby county, wherein said property is situated, his declaration of homestead, signed and acknowledged by him as required by law, stating all the facts requisite in such cases, which declaration was duly recorded; that during his life-time and until his death, said Timothy G. continued to reside with his family upon said premises, and to claim and use the same as a homestead; that during the settlement of said estate and while Charles Smith, brother of deceased, was administrator, to wit: June 12, 1868, upon proper and legal proceedings had and taken in the district court of said county, the property described in the declaration of homestead was, by decree of said court, set apart for the benefit of said Harriet M. and her legitimate children, the plaintiffs herein; that thereafter, upon the petition of said Harriet M., said decree, on the twenty-sixth day of February, 1870, was so amended as to include in the description of the property so set apart, the said south twenty-five feet of lots three and four, in block eighteen; that said decree, as amended, has never been reversed or modified, and has remained, and still continues, in force; that no administration was ever had or attempted to be had upon or concerning said premises, other than said decree, and the amendment

thereto, subsequent to the making and entry thereof; that W. H. Smith, on the eighteenth day of March, 1876, was duly appointed guardian of the persons and estates of these plaintiffs, who thereafter duly qualified, entered upon the discharge of his duties and has continued to be, and now is, such guardian.

Plaintiffs allege that by reason of the facts stated they became, and now are, the owners, and entitled to the possession, of an undivided one half of all the premises set apart by the district court, together with the dwelling-house thereon and the appurtenances; that on or about June 1, 1877, defendants wrongfully entered into and upon said portion of said premises and ousted and ejected plaintiffs therefrom, and now unlawfully withhold the possession of the same from plaintiffs, to their damage in the sum of one thousand dollars; that the value of the use of said property is one hundred and twenty-five dollars per month.

Judgment is asked for the possession of the interest claimed, together with one thousand dollars damages, one hundred and twenty-five dollars per month for use and occupation, and costs of suit.

To the complaint the defendants interposed a demurrer upon two grounds: "1. That there is a defect of parties plaintiff in this, to wit: Said Harriet M. Smith is a necessary party plaintiff, without whose presence there cannot be a complete determination of the controversy in this action; 2. That said complaint does not state facts sufficient to constitute a cause of action against defendants, or either of them, in this, to wit: It appears from said complaint that the said plaintiffs, nor either of them, are the owners of said property or any part thereof. It appears from said complaint that said Harriet M. Smith is the owner of said property, and is entitled to the possession of the same."

The court below sustained the demurrer upon both grounds stated. Plaintiffs refused to amend their complaint within the time allowed therefor by the court, and judgment of dismissal and for defendants' costs was thereupon entered. Plaintiffs appeal from that judgment. We will first consider the second and most important ground of demurrer.

As we understand them, counsel for appellants contend that, upon the death of Timothy G. Smith, the title to an undivided one half of the property set apart by decree of the district court vested in plaintiffs, and that they thereby became, and now are, entitled to the possession of the same. On the contrary, it is contended by counsel for respondents, that Timothy G. and Harriet M. held the property as "joint tenants;" that upon the death of the former the whole estate became the sole property of the latter.

There is no allegation that the property described in the complaint was the separate property of the father, and the presumption is that the premises described in the declaration of homestead, prior to the filing thereof, as well as those not included therein, were common property. (*Smith* v. *Smith*, 12 Cal. 224.) The questions presented require a construction of a part of our homestead and probate laws. And, first, it is proper to state certain facts shown by the statutes and decisions of California. In 1851 a homestead law was passed in that state, in all particulars essential to this case, like the one passed by our Legislature in 1861. (Wood's Dig. 1860, p. 850; Nevada Stats. 1861, p. 24.) It did not declare in terms the nature of the estate held therein by the husband and wife, or either of them. It provided that the homestead, * * * to be selected by the owner thereof, should not be subject to forced sale; and that the homestead and other property exempt from forced sale, upon the death of the head of the family, should be set apart by the probate court for the benefit of the surviving wife and his own legitimate children. Under that statute, until 1859, the supreme court decided that the homestead was held in a sort of joint tenancy by the husband and wife, with the right of survivorship. (*Taylor* v. *Hargous*, 4 Cal. 272; *Poole* v. *Gerrard*, 6 Cal. 73; *Estate of Tompkins*, 12 Cal. 114.) In 1859, in *Gee* v. *Moore*, 14 Cal. 472, the same court held that the doctrine announced in the previous cases cited, had never met the approbation of the profession, and said: "The wife, if surviving her husband, takes the property, not by virtue of any right of survivorship arising from the alleged joint tenancy, but as property set apart by

law from her husband's estate for her benefit and that of
his children, if there be any. In the same way other prop-
erty, exempt from forced sale, is set apart to her." (P.
478.) At the next session of the Legislature of that state,
the homestead law of 1860 was passed, which, in all partic-
ulars material to this case, was precisely like our present
law, passed in 1865. (C. L., sec. 186.) Both statutes, in
the first section, declare that the homestead may be selected
by either husband or wife, or both, and that from and after
the filing for record of the declaration of homestead signed
and acknowledged as provided therein, "the husband and
wife shall be deemed to hold said homestead as joint ten-
ants." In 1863, more than two years prior to the adoption
of the first and fourth sections of the California homestead
law of 1860 by our legislature, the supreme court stated the
meaning of the words "from and after the filing for record
of said declaration the husband and wife shall be deemed
to hold said homestead as joint tenants," as follows: "The
distinguishing incident of a title by joint tenancy is, that
the entire tenancy, or estate, upon the death of one of the
joint tenants goes to the survivor, and vests in him abso-
lutely. It would seem from this statute that it was the in-
tention of the legislature that the homestead should vest in
the surviving husband or wife absolutely, and not descend
to the heirs of either." (*Estate of James*, 23 Cal. 418.)
Between the date of that decision and the passage of our
homestead law in 1865, no other construction was placed
upon the language of the first section adopted by our legis-
lature; nor is it claimed that a different construction has
been given since, except in *Wixom's Estate*, 35 Cal. 320,
and *Rich* v. *Tubbs*, 41 Cal. 34, to which cases we shall again
refer.

In *McQuade* v. *Whaley*, 31 Cal. 527, decided in 1867, the
court took the same view. In that case one Casement and
his wife occupied the lot in question as a homestead, from
1852 until 1861, when he died. The wife conveyed the lot
to plaintiff, who claimed the whole on the ground that his
grantor, upon the death of her husband, held the entire
property as surviving joint tenant under the homestead
statute of 1860.

The law of 1860, which was amendatory of the statute of 1851, provided that, from and after the filing for record of said declaration, the husband and wife should be deemed to hold said homestead as joint tenants; and also, that all homesteads then before appropriated and acquired by husband and wife under the statute of 1851, should be deemed to be held in joint tenancy; provided they should within one year prepare and file for record their declaration of homestead as therein required. It was admitted by counsel for plaintiff, that neither Casement nor his wife had ever filed a declaration, and the court said: * * * "In a number of cases decided between the years 1851 and 1859, it was held that the homestead was an estate held by the husband and wife in joint tenancy, and of consequence it became the absolute property of the survivor upon the death of the other. But in *Gee* v. *Moore*, 14 Cal. 477, these decisions were overruled on this point, and it was there declared that the doctrine that the estate was one of joint tenancy was not warranted by any language of the constitution or the statute. * * * The doctrine of the case here cited was affirmed in *Bowman* v. *Norton*, 16 Cal. 216, and was followed in *Brennan* v. *Wallace*, 25 Cal. 114. These several cases had reference to the homestead estate as created under the law as it existed prior to the passage of the act of 1860, and must be deemed as settling the construction relating to the subject as then existing. * * * We have seen that by the decisions in the cases of *Gee* v. *Moore* and *Bowman* v. *Norton*, it was held that the relation of husband and wife in respect to the homestead appropriated and acquired under the act of 1851, was not a joint tenancy, and regarding these decisions as declaring the law correctly, we are brought to the inquiry whether, by the act of 1860, that relation was created as to homesteads before then acquired, and if so, whether, by force of the statute, such a change was wrought that each party became invested with an indefeasible estate in the homestead as joint tenants, discharged of all conditions." It will be seen that the inquiry presented and proposed by the court was the same as the one under discussion in this case; because, if a joint tenancy was

created by the amendatory statute of 1860, in relation to existing homesteads acquired under the law of 1851, it is certain that the same was true concerning homesteads selected and acquired according to law after the date of the amendatory statute. The court then states the provisions of the statute of 1860, and adds:

"The amendments contained in the act of 1860 must be considered together and *in pari materia* with the provisions of the act of 1851, in order to ascertain what rights and interests were brought into being by force of these acts of the legislature acting upon given conditions precedent to their possible operation. The first section of the act of 1860 provides, that all homesteads heretofore appropriated and acquired by husband and wife under the act of 1851, shall be deemed to be held by such husband wife in joint tenancy. Had the act stopped with this provision, it might well be said, first assuming that the legislature had the power thus to create a particular estate, that by this language a joint tenancy was created in respect to all homesteads then acquired and existing under the act of 1851; but it does not stop here. The fifth section provides that those entitled to homesteads under the act of 1851, shall be entitled to the benefits of the act of 1860, and that such homesteads shall be protected to the same extent and in the same manner, as if acquired under the provisions of the act of 1860; that is, by making a declaration of intention to claim the premises selected as a homestead, and signing, acknowledging and recording such declaration; provided, however, that if any person thus claiming a homestead under the act of 1851 makes no such declaration in the mode and within the term prescribed, the homestead which he or she had under the act of 1851, shall be deemed to have been abandoned."

The court decided against plaintiff, on the ground that Casement and wife had not filed their declaration, and hence, that the homestead was not held by them in joint tenancy. The opinion closes in these words: "It is argued on behalf of the plaintiff that as the husband died after the passage of the act of 1860, and before the time had elapsed

within which a declaration of homestead might be made, acknowledged and recorded, the wife took the whole property as surviving joint tenant upon the death of the husband, and then became the owner in fee-simple absolute of the premises; and that, as a consequence of the concurrence of these circumstances, there was no necessity to make and record a declaration of homestead in order to secure to her the property which already belonged to her as owner thereof in fee. We have already considered the ground on which, if we are right in our interpretation of the homestead laws, it must readily appear wherein the argument of the learned counsel is at fault."

We have quoted liberally from this case for the purpose of showing, that although it went off upon a point not presented here, still the opinion shows that questions which are involved in this case were well considered in that; and we do not hesitate to express our belief that the decision would have been in favor of plaintiff had it appeared that a declaration was filed according to law. There is no intimation that the fourth section, of which, that section in our statute is a copy, tends even to modify the first; and the fifth section, which declared an abandonment if the homestead declaration was not filed in time, is not contained in our statute.

As we have seen, counsel for plaintiff in that suit based his entire case upon the claim that Casement and wife held the homestead as joint tenants, with the right of survivorship under the statute of 1860. The court did not say to him, or in any manner intimate, that such joint tenancy would not have been created had the requirements of the law been followed, which would have been a complete answer to his argument; but it did say in substance: "Admitting that the legislature had the power to create a particular estate, you could have maintained your action had a declaration been filed in the time and manner provided; but Casement and wife having failed to perform the act necessary to create a joint tenancy, you cannot recover."

In 1862, the first section of the California statute of 1860 was allowed to remain without change, while the fourth was

amended. Prior to the amendment it was as follows: "The homestead and other property exempt from forced sale shall, upon the death of either husband or wife, be set apart by the probate court for the benefit of the husband or wife and his or her legitimate children; and in the event of there being no survivor or legitimate children of either husband or wife, then the property shall be subjected to the payment of their debts." * * * Following is the section as amended: "The homestead property selected by the husband and wife, or either of them, according to the provisions of said act, shall, upon the death of the husband or wife, vest absolutely in the survivor, and be held by the survivor as fully and amply as the same was held by them or either of them immediately preceding the death of the deceased, and shall not be subject to the payment of any debt or liability contracted by or existing against the said husband and wife, or either of them, previous to or at the time of the death of such husband or wife, except such debt or liability as the homestead was subject to at the time of the death of such husband or wife."

To our minds, the amended section just quoted is but an amplification of the words contained in the first section of the statute of 1860, to wit: "From and after the filing for record of said declaration, the husband and wife shall be deemed to hold said homestead as joint tenants." In the Estate of James, the court said in 1863, two years before its adoption here: "It would seem from the statute of 1860 that it was the intention of the legislature that the homestead should vest in the surviving husband or wife absolutely, and not descend to the heirs of either." Surely no more is declared by the amended section.

The amended section was more easily comprehended by persons uneducated in the law; but to others, the use of the words "joint tenants," as they appeared in the statute of 1860, was only a short method of expressing all that is conveyed by the use of their most elaborate definition. At the time of the amendment in 1862, so far as we know, there had been no expression of opinion by the supreme court in relation to the statute of 1860. Under such cir-

cumstances, the legislature of 1862 evidently passed the amendment of that session, for the purpose of removing all possibility of doubt upon the subject, by putting in the statute the definition of the words "joint tenants," found in all the books treating of their rights. These words have a settled meaning and constant recognition in the books, both of common law and under the statute. In Washburn on Real Prop. vol. 1, 642, the author says: "While, moreover, joint tenants constitute but one person in respect to the estate, as to the rest of the world, between themselves each is entitled to his share of the rents and profits so long as he lives, but subject to the right of the survivor or survivors to take the entire estate upon his death, to the exclusion of his heirs or personal representatives." And on page 646: "The interest which a joint tenant has as survivor, is not a new one acquired by him from his co-tenant, upon the latter's death; for his own interest is not changed in amount, but only his co-tenant's is extinguished."

Our legislature has recognized their common definition in the statute now in force concerning conveyances (Stat. 1861, p. 17, sec. 41): "Every interest in real estate granted or devised to two or more persons, other than executors or trustees, as such, shall be a tenancy in common, unless expressly declared in the grant or devise to be a joint tenancy."

As was said by the court in *Barber* v. *Babel*, 36 Cal. 17, we think "the legislature did not adopt the provision that the 'husband and wife shall be deemed to hold the homestead as joint tenants' without some object. * * * They did not intend to use a meaningless phrase, to be attended by no consequences." The words "joint tenants" have as certain, definite meaning in law as "mortgage," "lease," or "promissory note." Their use in our statute of 1865 constituted a radical difference between the old law and the new, if it appears from the whole statute that the legislature intended to use them according to their unvarying definition.

In no instance, except in the case of homesteads appropriated and selected according to the law in question, has the legislature declared that property shall be held by

the owners as joint tenants. In all other cases the statute leaves it to the owners to expressly declare that they so hold it, and if no such declaration is made, they are presumed to hold it as tenants in common. If, then, there is nothing in other sections plainly indicating that the legislature did not intend what is definitely and prominently stated in the first section, upon the question of survivorship, " the great, distinctive characteristic of joint tenancies," it seems to us there is little room for construction, and we must uphold the statute as it is written.

It is not claimed that the unmistakable meaning of section 1, when considered alone, is at all limited or modified, unless by section 4. Succinctly stated, these sections provide as follows:

Sec. 1. Upon the filing of a declaration, as herein provided, the husband and wife shall be deemed to hold said homestead as joint tenants.

Sec. 4. The homestead and other property exempted from forced sale, shall, upon the death of either husband or wife, be set apart by the court for the benefit of the surviving husband or wife and his or her legitimate children; and in the event of there being no survivor or legitimate children of either husband or wife, then the property shall be subject to the payment of their debts. ·

"If technical words are used in a statute, they are to be taken in a technical sense, unless it appears that they were intended to be applied differently from their ordinary or legal acceptation. (1 Kent's Com. 462.) And it may, I think, be stated, as a corollary from these principles, that when a word, by common usage, has acquired a popular signification, it shall be understood in that sense, unless its meaning is controlled by the context in which it is found, or the circumstances under which it is used." (Clark v. City of Utica, 18 Barb. 453.)

In 3 Wash. (C. C. R.), 209, Mr. Justice Washington said: "If a statute of the United States uses a technical term which is known, and its meaning fully ascertained by the common or civil law, from one or the other of which it is obviously borrowed, no doubt can exist that it is necessary

to refer to the source whence it is taken for its precise meaning."

In the case of *Ormsby County* v. *The State of Nevada*, 6 Nev. 286, the court said: " It is possible that the statute in question, upon close investigation, might fall within the general rule as quoted; but that rule, although supported by the highest authority, is, as experience has proved, of dangerous application. The cases where a court should exercise the right given under it, should be of the clearest; as when a court takes one step outside the literal wording of a statute, to declare what otherwise or otherwhere appears, there arises at once the possibility, if not the probability, of an assumption of power—judicial legislation—a thing to be most cautiously avoided under the true theory of our government, national and state. There is, though, always this distinction to be observed in settling the meaning of technical words, or words having a peculiar legal signification when they occur in a statute. Such words when used with reference to a particular subject as to which they have a special meaning, should receive that and no other; but if used generally, the natural conclusion is, that the popular meaning is the one intended."

It cannot be doubted that the words, "joint tenants," are used in the statute in question, " with reference to the particular subject as to which they have a special meaning." In fact it may be said that when properly used as designating the owners of property, real or personal, they have no other than a special meaning. This is not denied, but it is said that the legislature did not, in fact, intend to use them in that sense.

What is there, then, in section 4, which shows, clearly or otherwise, that in section 1 the legislature said one thing but meant another ? It will not do to answer this question according to our ideas of the justice or injustice of allowing a homestead to be held by the husband and wife in joint tenancy, with the right of survivorship; because just and wise men have differed and will continue to differ upon this question. The statutes of different states show that there is great diversity of opinion as to what the statute should

be, and the decisions thereon are more discordant than the statutes themselves. It may appear to the mind of one person, that it is impolitic and unjust to permit a surviving wife to take the homestead as her own property—trusting to a mother's affection and her sense of right, for the protection of the minor children, just as before the father's death their care and protection was entrusted to both—while another may regard it not only prudent, but entirely equitable to do so. The state of California has passed through many changes in relation to the homestead law, and after years of experience, and the greatest care in the preparation and adoption of her code, has finally settled upon joint tenancy of the homestead property with the right of survivorship, as the wisest and most desirable policy. So we must ascertain the intention of the legislature from an examination of the law itself. After much thought and careful study, we are unable to conclude, that the expressed and evident meaning of section 1, is in any manner or to any extent limited or modified by section 4. Certainly, the language of the latter section does not in direct terms conflict with the plain signification of the first. It contains no words which can be construed as vesting the title in any person other than the survivor, unless this language, "The homestead and other property exempt from forced sale shall, upon the death of either husband or wife, be set apart by the court for the benefit of the surviving husband or wife, and his or her legitimate children," can be said to mean that, the latter " are entitled to take some interest upon the death of either husband or wife," as is said in *Rich* v. *Tubbs*, 41 Cal. 36. We shall endeavor to show upon an examination of that case, that such result does not follow in the sense intimated in the opinion. It would hardly be contended, under the California code, if the homestead was selected from common property according to law, that the survivor takes less than the whole estate. Paragraph 6264 (sec. 1265) of the civil code provides that: " From and after the time the declaration is filed for record, the premises therein described constitute a homestead. If the selection was made by a married person from the community property, the land, on the

death of either of the spouses, vests in the survivor." * * *
And yet, paragraph 11,465 (sec. 1465) of the same code,
provides that: "Upon the return of the inventory * * *
the court, or the probate judge, may, on his own motion,
or on petition therefor, set apart for the use of the surviv-
ing husband or wife, or the minor children of the decedent,
all property exempt from execution, including the home-
stead selected, designated and recorded." Can it be said
that the last section quoted is in conflict with the first, or
that the apparent meaning of the first is rendered doubtful
by the last? We think not. Although the homestead vests
in the survivor to the extent of the exemption, to wit: five
thousand dollars, if it exceeds that value the excess is not
exempt from forced sale, or from administration. It is the
homestead described in section 1 of our statute, that is ex-
empt, and which is required to be set apart by section 4;
that is to say, a quantity of land, together with the dwell-
ing-house thereon and its appurtenances, not exceeding five
thousand dollars in value. It is, therefore, necessary to in-
clude the homestead property in the inventory, that it may
be appraised; then the whole or such portion as is exempt,
must be set apart by the court, as property not belonging
to the estate, the excess remaining to be subjected to ad-
ministration. By section 4, our legislature intended to pre-
serve the method already provided in the probate law for
ascertaining the extent of homestead exemption, in order
that the balance might be added to other property not ex-
empt, to be used for the payment of debts and the expenses
of administration. This, in our opinion, was the chief, if
not the only reason why the first paragraph of section 4 was
enacted.

In *Rich* v. *Tubbs*, cited by counsel for appellants, the
declaration was executed and filed by both husband and
wife under the California statute of 1860, upon the separate
property of the wife.

The court first concludes that the effect of the order of
the probate court setting apart the homestead for the use of
the family of the deceased husband, "was not to change or
transmit the title; that it did not adjudicate the question of

title as between the parties who asserted a claim to it; that the purpose and effect of the order setting apart such homestead was, merely, that the property was relieved from administration—that it did not constitute assets of the estate of the deceased—and the order set it apart for whom it might concern."

The court then adds: "In whom did the title vest upon the death of the husband? The homestead act of 1860 declares that the husband and wife shall hold the homestead property as joint tenants; but that provision is to be read in connection with the fourth section of the act, which provides that, upon the death of the husband or wife, the homestead shall be set apart by the probate court for the benefit of the survivor and his or her legitimate children. Although they are denominated joint tenants, they are not such in the full sense of the common law definition of that term. The legitimate children are entitled to take an interest, upon the death of either husband or wife. It is unnecessary, in this case, to define the nature of the interest which descends to the children; but it is clear that under the fourth section of the act of 1860, they take some interest by inheritance from their deceased father or mother. The homestead act of 1862 contains no such provision as is found in section four of the act of 1860. After providing that the husband and wife shall be joint tenants, it provides that, on the death of either, the homestead shall vest absolutely in the survivor. No provision is made therein for the inheritance of any interest in the homestead property by the children of the deceased. As the defendants (the children of the deceased husband) took nothing by inheritance, unless the law in force at the time of the decease of their father so provided, the question on which the case turns is, at what time did he die? It is found that he died in 1862, the precise time not being stated. The order of the probate court was made July 7, 1862. The homestead act of 1862 was passed and took effect May 12, 1862. It is incumbent on the defendants alleging error, in other words, claiming that they acquired interest in the homestead property by inheritance, to show that the deceased died before their

right to take by inheritance was cut off by the passage of the act of May 12, 1862. This fact is not shown by the record." If it is true, as the court first concludes, as it undoubtedly is, that the order of the probate court setting apart the homestead for the use of the family did not change or transmit the title; that the only purpose and effect of the order was merely to relieve the property from administration, it is difficult to perceive how a provision in the homestead law requiring such an order to be made, could in any manner transmit or change the title. If the final order, when made, merely "sets the property apart for whom it may concern," and "does not in any manner change the title," we fail to see how the fourth section of the homestead law requiring such an order to be made, can possibly be said to accomplish more than is effected by the order itself. How can it be said that the legislature, by requiring the probate court to set apart the homestead, intended by that provision in the homestead law, that the legitimate children should take some interest by inheritance from their deceased father or mother," when, before the amendment of the law in 1860 and before its adoption in this state in 1865, the courts had always decided, as they have since, that the effect of the order setting apart the homestead "for the benefit of the survivor and his or her legitimate children," when made, did not in any manner affect or change the title? How could the legislature, in passing the homestead law, have intended that any other or greater effect should be given to the order of the probate court setting apart the homestead property, than the courts had, at all times, declared the effect to be?

Section 4, to which the court referred, only commanded the doing of what was already required by section 121 of the probate act, the effect of which, when done, was, as before stated; and in the *Estate of Wixom*, 35 Cal. 324, the court held that section 121, as amended subsequent to the amendment of the homestead law of 1862, did not direct or regulate the course of the title to the homestead, although it contained the words "for the use of the family." How then could those words regulate or affect the title when used

in section 4 of the homestead law? We agree with the conclusions first arrived at in *Rich* v. *Tubbs*, and by reason of such agreement, we are compelled to conclude that section 4 of the homestead law does not in any manner limit or modify the provision of the first section, that the "husband and wife shall be deemed to hold said homestead as joint tenants," so as to entitle a legitimate child to take any interest in such property upon the death of the father, in the sense intimated in that opinion.

We find nothing in section 4 which indicates an intention to transmit to the children, any portion of the title to a homestead appropriated and selected according to that statute. Every act done to preserve the homestead is "for the benefit" of the children as well as the parents, both before and after the death of the father or mother. While the parents are living, and when the title is undoubtedly in them, the property is exempted from forced sale as much for the benefit of the minor children as it is for the father or mother; and when the father dies it is still exempted, and is kept from administration for their benefit, as well as the mother's, because during their minority it is the parents' duty to provide them with a home, and the law presumes they will share its blessings with her. In our opinion, the privilege of sharing the homestead with the survivor, so long as it is retained as such, is the benefit intended to be secured to the children. If it is true that the benefit referred to is the right of the children, upon the death of the father, to take and use in their own name and as their own property, one half of the homestead premises, then the grand object of the law is defeated; then the children can convey their interest to a stranger, and thus destroy the home, not only as to themselves, but the survivor also. Such a result could not have been intended. And, too, if one half vests in the children, subject only to the right of the survivor to enjoy the whole as a homestead, then the estate is no more valuable to the latter than it was under the old law. Yet, in *Barber* v. *Babel*, 36 Cal. 18, the court says: "The express provision that the husband and wife shall be deemed to hold said homestead as joint ten-

ants, certainly means that they shall hold some estate or interest as to the homestead different from that held before; that the estate or interest in the homestead shall be joint, and that the wife at least shall have a more distinct, specific, individual, available, indestructible and valuable interest or right than she held before; otherwise the provision is without meaning and without consequence. Aside from the terms of the act, the circumstances under which it was passed show that the object indicated was intended to be accomplished. Under the act of 1851, in a series of decisions prior to 1859, the courts held that there was in the homestead, ' a sort of joint tenancy with the right of survivorship, at least as between husband and wife,' which could not be altered or destroyed except by the concurrence of both, in the manner provided by law. . This seems to have become the settled construction of the act, and was in no way interfered with by the legislative department of the government. It must therefore be supposed to have been satisfactory to the people; but at the October term, 1859, our predecessors felt called upon to overrule the prior series of decisions and adopt different views. (*Gee* v. *Moore*, 14 Cal. 472.) The very next legislature, however, passed the act of 1860, and thereby promptly sanctioned, by express legislative action, the views which at first prevailed, but provided a more ready and satisfactory mode of impressing the land with the homestead character, and making it a matter of public record, so that none could be misled as to the existence and extent of the homestead right. * * * * The law, doubtless, goes beyond the express injunction of the constitution upon the subject of protecting the homestead. The policy, however, was adopted by the legislature, at an early day, and has been rigidly adhered to in every amendment made during seventeen years. The prompt interference of the legislature, and restoration, substantially, of the law as first announced by the courts upon the reversal of said decisions made, shows that it had the approval of the people."

The case of the *Estate of Wixom*, 35 Cal. 324, decided in 1868, is also referred to by counsel for appellants as sus-

taining their theory. Let us see. The case was this: Wixom and wife, residing upon the property in question, filed upon it a declaration of homestead in 1861. Wixom afterwards died, and in 1867, his wife petitioned the probate court to set apart the homestead to her use. At that time the widow was living on the property, two of her children, minors, being with her. The court refused to grant the widow's petition, holding that there were minor heirs who were entitled to share the homestead with her. The supreme court reversed the order denying the petition, on the ground that under the homestead act of 1862, then in force, the property vested in the widow, upon the death of her husband. After referring to the homestead and probate acts of 1851, the court says: "A radical change, however, has been made in the homestead act, which now provides that, upon the death of either husband or wife, the homestead property shall vest absolutely in the survivor, subject only to such debts or liabilities as were a legal charge upon it at the time of the death of such husband or wife. This change was made in 1862. To have maintained entire consistency, the one hundred and twenty-first and one hundred and twenty-fifth sections of the probate act (corresponding with sections 123 and 127 of our probate statute) should have been amended in like manner." * * * * It is claimed the language quoted shows that, in the opinion of the court, the change in the homestead law of that state, making the husband and wife joint tenants with the right of survivorship, was not wrought until 1862. We do not think so.

It will be noticed that it was a matter of no consequence when the change took place, if it was subsequent to the date of the probate law, and the statute embodying the change was in force at the time of Wixom's death; both of which facts were true as to the law of 1862. The statute of 1860 was not in force at either date, and could not affect the case. The court therefore, naturally and necessarily, referred to the existing statute as the controlling law. The statute of 1860 was a dead letter, and it would have been strange, indeed, if the court had mentioned that, which did not affect

the case, instead of the one in force, which controlled the decision. Notice the language : " A radical change, however, has 'been made in the homestead act (that is, since 1851) which now provides (statute of 1862) that upon the death of either husband or wife the homestead prop- erty shall vest absolutely in the survivor.     *     *     * This change was made in 1862." The court intended to say that the statute, the provisions of which were stated, was enacted in 1862. It did not intend to say that, until 1862, the homestead was not held by the husband and wife in joint tenancy.

Our opinion is, that upon the death of their father, plaintiffs did not inherit one half or any portion of the homestead described in the declaration, and that, as to such property the complaint does not state a cause of action, re- gardless of section 127 of the probate law, the homestead statute being the last expressed will of the legislature. (*Estate of Wixom, supra.*)

But the south twenty-five feet of lots 3 and 4, in block 18, described in the complaint, were not included in the declaration, and a joint tenancy therein was not created be- tween plaintiffs' father and mother under the first section of the homestead law. (*McQuade* v. *Whalley, supra;* C. L., sec. 186.)

It was set apart by order of the district court for the ben- efit of the widow and children, but, as we have seen, such order did not change or transmit the title. Its only object and effect was to relieve it from payment of the 'general debts contracted by the husband during his life-time, and from debts accruing in the course of administration. (*Rich* v. *Tubbs, supra; Estate of David Walley,* 11 Nev. 264–5.) Under the eleventh section of the statute defining the rights of husband and wife, which was in force at the time of the death of T. G. Smith (Stat. 164–5, p. 240), if this was com- mon property, one half vested in Harriet M. Smith and the other half in plaintiffs, who were tenants in common therein with their mother. (*Broad* v. *Broad,* 40 Cal. 496; *Broad* v. *Murray,* 44 Id. 228.) True, they took their inherited in- terest subject to the mother's rights therein, whatever they

were, after the order of the court setting it apart was made; but the title to one half was in them, as well as the right of entry and possession, at least during their minority, and while it was used as a homestead; and if for any reason the homestead claim was abandoned, or ceased to exist, "the right of plaintiffs became absolute, and entitled them to the immediate possession of their undivided interest in the property." (*Johnston* v. *Bush*, 49 Cal. 201.) If, then, this was common property—and such is the presumption—plaintiffs, being minors, had both title and right of possession, as to one half of the same. Counsel for respondents claim that it was not common property, for the reason that section 11, above referred to, provided that in case of the death of the husband, the entire common property should be equally subject to his debts, the family allowance, and the expences of administration; that the homestead cannot be made subject to such expenses, and consequently, that it was not common property. It was decided by this court, in the case of the *Estate of Walley, supra,* that the homestead law of 1865 did not repeal the sections of the probate law providing for setting apart the homestead. The latter, then, must be construed, in this case, with the homestead statute, and the statute defining the rights of husband and wife, in force at the time of the death of plaintiff's father. (Statute 1864–5, p. 239.) A homestead selected and declared upon according to the requirements of the existing statute is not common property, in the sense intended in the statute defining the rights of husbands and wives, and cannot be subjected to administration (*Estate of Tompkins*, 12 Cal. 124); but a homestead not so selected can be so used, unless it is set apart by the court, because it is common property after the death of the father, if it was such before. In case of a homestead that has been set apart merely by order of the court, the general provision of section 11 of the statute defining the rights of husbands and wives, above referred to, which provided that the entire common property should be subject to the husband's debts, in case of his death, is controlled by the provision of the probate law, which declares that the homestead shall be set apart by the court and relieved from administration. (*People* v. *Wells*, 11 Cal. 329.)

This portion of the premises described in the complaint having been common property, an undivided one half, upon the death of the father, vested in plaintiffs, who then held the same as tenants in common with their mother, as before stated. At the time the action was commenced plaintiffs had the right of possession as against defendants. (*Johnston* v. *Bush, supra.*)

We think, also, that upon the facts stated in the complaint plaintiffs would be entitled to judgment for possession of their half of the same, without making their mother one of the parties plaintiff. (*Updegraff* v. *Trask,* 18 Cal. 458; C. L., 1077.)

Should it be necessary, upon the filing of an answer, or at any time during the progress of the trial, to bring in the mother, the court has full power to so order. At present we cannot say that, as to this property, she is a necessary party.

The judgment is reversed and the cause remanded. The district court will enter an order overruling defendants' demurrer, with leave to file answer.

BEATTY, J., dissenting:

I concur in so much of the opinion of the court as holds that the plaintiffs inherited an interest in that portion of the demanded premises which was not included in the declaration of homestead, and I concur in the conclusion that the judgment of the district court should be reversed. But upon the more important question which is so largely discussed by Justice Leonard, I dissent from the views of my associates.

In my opinion, our homestead law of 1865, considered without reference to the circumstances under which it was borrowed from the state of California, does not sustain the construction which is placed upon it. The first section, it is true, provides that the homestead shall be held by the husband and wife as joint tenants, and if that section stood alone there would be no reason to suppose that the legislature meant anything different from what they said, though even then it would not necessarily follow that the right of

survivorship incident to an estate in joint tenancy would attach to the *fee*. On the contrary, if section 4 was out of the act, it might reasonably be held that the right of survivorship attached only to the homestead as such, and that whenever it ceased to be a homestead, the estate would descend to the heirs of the person or persons who owned it at the time it was declared upon. But the provisions of section 4 must be considered together with those of the first section; and they are not only useless, they are positively repugnant, upon the supposition that the homestead is held by husband and wife in strict joint tenancy. I prefer to give their full force and effect to the specific provisions of section 4 rather than to the technical words "joint tenants" in section 1. Every member of the legislature knows what he means when he gives particular directions that property shall be set apart for the use of the widow and children of a deceased person, but how many know the meaning of joint tenancy?

If the circumstances under which our homestead law was adopted are considered, I think that, far from weakening, they add very greatly to the force of these conclusions. There is no room for doubt that the occasion for enacting a new homestead law in 1865 was the requirement of the constitution then newly adopted (art. iv, sec. 30) that laws should be passed providing for the recording of homesteads in the counties wherein they were situated. In compliance with this injunction of the constitution the California law of 1860 was copied. An attempt is made in the opinion of the court to show that when we borrowed the California act it had already received the construction here placed upon it, but I think the California decisions referred to by the court may be safely challenged to show that not only had the act of 1860 never been so construed before we adopted it, but it has never been so construed to this day. On the contrary it has been construed otherwise. The expression let fall by Judge Crocker in the case in 23 Cal. (*Estate of James*), was as loose a dictum as can be found in the reports of that state, upon a point the decision of which was expressly avoided, and has never been referred to in any

subsequent opinion of their supreme court as having the semblance of authority. A dictum which receives no consideration whatever in the court where it is uttered certainly does not grow into authority when transported into another state.

Much more importance, I think, is attributable to the fact that when we adopted our homestead law and resorted to California for a model, we had their act of 1860 as originally adopted and as amended in 1862 to choose between. The language of the amendment of 1862 is quoted in the foregoing opinion, and no one can doubt that it was intended to add the incident of survivorship to the estate created by the act of 1860. We chose the act of 1860 and rejected the act of 1862. The inference is that we did not desire the law of 1862.

The California cases involving a construction of their various homestead laws are extensively quoted in the opinion of the court, and an attempt is made to show that they sustain its conclusions; but those who may have the curiosity to examine the cases in the reports will find, if I am not mistaken, that they are all consistent with the conclusion that it was not until the act of 1862 that the right of survivorship attached to the homestead. The very opinion of Judge Sawyer from which such extensive quotations are made (see *Barber* v. *Babel*, 36 Cal. at page 17) says: "And since the amendment of 1862 the right of survivorship, the grand incident of joint tenancy is added," showing plainly that he did not mean what it is assumed he meant by other portions of his opinion. It is not worth while, however, to pursue this subject, as my only desire is to record my dissent from a decision which, henceforth, becomes a rule of property in this state and involves the consequence of disinheriting a man's children in favor of those of another. In my opinion this is a much more serious consequence than those which are depicted in the opinion of the court; and those consequences by no means follow from my construction of the law. There is no difficulty in holding that a child may inherit an interest in the homestead from its deceased parent without being driven to the conclusion that

it could thereby destroy the homestead. Its interest would remain in abeyance, while the property retained the character of a homestead, and until the death of the survivor of its parents, but could then be asserted and enforced.

### RESPONSE TO PETITION FOR REHEARING.

By the Court, LEONARD, J.:

We are asked by appellants to grant a rehearing in this case, mainly upon the ground stated in the petition, that if the legislature contemplated that the husband and wife should hold the homestead strictly as joint tenants, it necessarily follows that either tenant may convey his or her interest to a co-tenant or even to a stranger, and thus destroy the homestead. We do not think that under the constitution and statute, a homestead is held by the husband and wife strictly as joint tenants. The constitution provides that "a homestead * * * shall not be alienated without the joint consent of husband and wife, when that relation exists;" and by statute it is enacted that homestead property shall not be deemed to be abandoned without a declaration thereof in writing, signed and acknowledged by both husband and wife according to law. But we do think the husband and wife hold the homestead as joint tenants, except so far as the usual rights of such tenants have been limited or modified by the constitution and the statutes. In the opinion of the court filed in this case, we had no occasion to consider whether any other elements of a strict joint tenancy than that of survivorship were or were not retained by the statute. We said: "If there is nothing in other sections plainly indicating that the legislature did not intend what is definitely and prominently stated in the first section, upon the question of survivorship, ' the great distinctive characteristic of joint tenancy,' it seems to us there is little room for construction, and we must uphold the statute as it is written." The power of alienation by either husband or wife, without the consent and joint act of the other, solemnly evidenced by deed duly acknowledged, is prohibited by the constitution and statute; but there is

nothing in either indicating an intention of abridging the usual rights of joint tenants as to survivorship.

We do not deem it necessary to do more than to refer to the opinion filed in answer to the other grounds urged in support of appellants' petition. To our minds the statute is plain, and the intention of the legislature unmistakable. If the policy of the present law is unsatisfactory to the people, a change must be wrought by legislative action.

Rehearing denied.

BEATTY, J. dissenting:

I dissent.